**WOMBLE BOND DICKINSON**
Anthony A. Coppola (AC 3548)
950 Third Avenue
New York, New York 10022
(332) 258-8450

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCO DESTIN, INC., 1000 HIGHWAY 98 EAST CORP., PANAMA SURF & SPORT, INC., and E&T, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> SHAUL LEVY, individually and as agent of L&L WINGS, INC.; MEIR LEVY, individually and as agent of L&L WINGS, INC.; ARIEL LEVY, individually and as agent of L&L WINGS, INC.; and BENNETT KRASNER, individually and as agent of L&L WINGS, INC. <br><br> Defendants. | Civil Action No.: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Marco Destin, Inc. and its affiliates 1000 Highway 98 East Corp., Panama Surf & Sport, Inc., and E&T, Inc., (collectively "Marco-Destin"), by and through its undersigned counsel, brings this Complaint for Fraud on the United States District Court for the Southern District of New York (the "Court") and on Marco-Destin against the following defendants: Shaul Levy; Meir Levy; Ariel Levy; and attorney Bennett Krasner (collectively, the "Defendants"), in their individual capacities for their intentional tortious acts as agents of L&L Wings, Inc. ("L&L"), and further alleges as follows:

1

## NATURE OF THE ACTION

1.     Plaintiffs Marco-Destin seeks relief against the Defendants from a February 15, 2011, Stipulated Order of Settlement and Dismissal (the "Settlement Order"), attached as Exhibit "A" hereto, previously entered in this Court and fraudulently obtained by L&L in the prior trademark infringement action styled *L&L Wings, Inc. v. Marco-Destin, Inc. et al,* Case 1:07-CV-04137-GWG (S.D.N.Y) (the "Underlying Trademark Action"), and recovery from Defendants for losses sustained by Marco-Destin as a result of this fraud. The fraud affected by the agents of L&L as alleged herein constituted a deliberately planned and carefully executed scheme to defraud not only this Court and Marco-Destin, but also the Patent and Trademark Office ("PTO") and other licensees of L&L.

2.     The fraud on the Court in the Underlying Trademark Action is a wrong against the judicial institutions set up to protect and safeguard the public because the paramount objective of the law of trademark infringement is the protection of the public interest.

3.     The claims pursued by L&L in the Underlying Trademark Action, arising from trademark rights and a trademark registration fraudulently obtained by L&L, were recently revealed to be a fraud on the Court in a final judgment entered on March 29, 2021, by the United States District Court for the Eastern District of North Carolina in the case styled *Beach Mart, Inc. v. L&L Wings, Inc*., Case No. 2:11-CV-44-FL et al. (the "Beach Mart Case").  In its judgment, the District Court in North Carolina found, *inter alia*, that:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Beach Mart, Inc. has **proven by clear and convincing evidence** that L&L Wings, Inc. **knowingly made false representations of material fact with an intent to deceive to the United States Patent and Trademark Office in 2006, 2007, and/or 2008, resulting in the issuance of federal trademark Registration No. 3,458,144** (the " '144 Registration"), and in 2011, resulting in the

2

issuance of federal trademark Registration No. 4,193,881 (the " '881 Registration"), thereby causing injury to Beach Mart, Inc.

*See* March 29, 2021 Final Judgment (emphasis added). A true and correct copy of the final judgment in the Beach Mart Case ("Final Judgment") is attached hereto as Exhibit "B."

4.     The ´144 Registration, which was recently determined by the District Court in North Carolina to have been fraudulently procured by L&L, is the same registration that attorney Bennett Krasner, under the direction and control of Ariel Levy, Meir Levy, and Shaul Levy, knowingly caused L&L to present to this Court in the Underlying Trademark Action in support of L&L´s trademark infringement claim against Marco-Destin.

5.     The Underlying Trademark Action was previously assigned to United States District Judge Barbara S. Taylor and United States Magistrate Judge Gabriel W. Gorenstein.

6.     In the Underlying Trademark Action, L&L, through its agents and attorneys, pursued claims against Marco-Destin to enforce rights in the "Wings" mark that it knew it did not own. A true and correct copy of the Complaint in the Underlying Trademark Action is attached hereto as Exhibit "C."   L&L, through its agents and attorneys, knowingly fraudulently misrepresented to the Court and Marco-Destin that it had proprietary rights in the "Wings" mark, while knowing that its rights in the mark were only rights of a mere licensee of Shepard R. Morrow, the true owner of the WINGS trademark. Despite knowing that it did not own rights to the "Wings" mark, L&L, through the Defendants, sought to enforce such purported rights anyway, by making false representations of fact to the Court so that the Court could not properly adjudicate the action.

7.     L&L's intentional concealment of its status as a licensee of the "Wings" mark and misrepresentation to the Court and Marco-Destin regarding its purported ownership rights in the same, as described above and in more detail below, was a willful obstruction of justice and fraud on the Court and Marco-Destin.  L&L, through and with the knowing and willful participation of

3

its attorney Bennett Krasner, knowingly made false representations of material fact to the Court which affected the integrity of the judicial process.

8.      As a result of L&L's fraudulent conduct, this Court authorized and entered the Settlement Order after granting L&L partial summary judgment for trademark infringement and related claims.  Pursuant to the fraudulently obtained Settlement Order, Marco-Destin was forced to pay L&L millions of dollars for purportedly violating trademark and trade dress rights that it has now discovered L&L did not and does not have. Marco-Destin was also forced to expend thousands of dollars to rebrand its stores and comply with the Court's Settlement Order.

## PARTIES

9.      Plaintiff Marco-Destin, Inc. is a Florida Corporation with a principal place of business in Medley, Florida.

10.     Plaintiff 1000 Highway 98 East Corp. is a Florida Corporation with a principal place of business in Medley, Florida.

11.     Plaintiff Panama Surf & Sport, Inc. is a Florida Corporation with a principal place of business in Medley, Florida.

12.     Plaintiff E&T, Inc., is a Florida Corporation with a principal place of business in Medley, Florida.

13.     Upon information and belief, Defendant Shaul Levy, an individual, is a resident of New York, New York. Upon further information and believe, Shaul Levy is an owner of, and former officer and director of, the South Carolina Corporation, L&L Wings, Inc, which is licensed to do business in the State of New York, and which maintains its principal place of business at 666 Broadway, 8th Floor, New York, New York 10012.

WBD (US) 58884440v2

14.     Upon information and belief, Defendant Meir Levy, an individual, is a resident of New York, New York. Upon further information and belief, Meir Levy is an owner of, and former officer and director of the South Carolina Corporation, L&L Wings, Inc, which is licensed to do business in the State of New York, and which maintains its principal place of business at 666 Broadway, 8th Floor, New York, New York 10012.

15.     Upon information and belief, Defendant Ariel Levy, an individual, is a resident of New York, New York. Upon further information and belief, Ariel Levy is an officer and director of the South Carolina Corporation, L&L Wings, Inc, which is licensed to do business in the State of New York, and which maintains its principal place of business at 666 Broadway, 8th Floor, New York, New York 10012.

16.     Upon information and belief, Defendant Bennett Krasner, an individual, is a resident of New York, New York. Upon further information and belief, Bennett Krasner was at all times relevant herein the attorney and agent of the South Carolina Corporation, L&L Wings, Inc, which is licensed to do business in the State of New York, and which maintains its principal place of business at 666 Broadway, 8th Floor, New York, New York 10012. Attorney Bennett Krasner personally signed and filed the initial Complaint of L&L in the Underlying Trademark Action on or around May 29, 2007, and therein attorney Bennett Krasner knowingly and falsely represented that L&L Wings owned the rights to the mark "WINGS". *See, e.g.,* Complaint ¶ 54.

17.     L&L Wings, Inc. is a South Carolina Corporation, owned by brothers Shaul and Meir Levy and managed by Ariel Levy, which is licensed to do business in the State of New York, and which maintains its principal place of business at 666 Broadway, 8th Floor, New York, New York 10012. L&L Wings, Inc. owns and operates beach accessory stores in South Carolina, North Carolina, Florida, Texas, Massachusetts, and California.

5

18.     As a result of the bankruptcy court proceedings initiated by L&L in response to the judgment in the Beach Mart Action, L&L Wings, Inc. is presently named in two co-pending and related actions in this Court filed by appellants Marco-Destin, Inc., *et al.*.: Case No 1:22-cv-1082 and Case No 1:22-cv-4058, both styled as *In Re: L&L Wings, Inc*.

## JURISDICTION

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court further has subject matter jurisdiction over this action as the fraud of L&L and its employees and agents that underlies the fraud on the Court is of the nature of a trademark action, and subject matter jurisdiction is provided under 28 U.S.C. §§ 1331 and 1338.  This Court further has subject matter jurisdiction pursuant to this Court's inherent and equitable powers and pursuant to Fed. R. Civ. P. 60(d), in that this Court is authorized and empowered to provide relief from its earlier judgments and to ensure the accurate and equitable administration of justice in connection with cases properly before it, including to correct and rectify the fraud on the court as alleged herein.

20.     This Court has personal jurisdiction over the individual defendants Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner, because each is a resident of the State of New York and because each is, or was at all relevant times, employed by L&L as an employee or an independent agent of L&L which maintains its principal place of business in New York. In addition, jurisdiction over each of the defendants is proper because L&L engaged in the fraudulent conduct in the Underlying Trademark Action as complained of herein, through the Defendants as its employees and agents, which was brought in this judicial district. In addition, the conduct complained of herein occurred in the State of New York, resulting in the entry by the Southern

6

District of New York of the Settlement Order that ultimately terminated the Underlying Trademark Action. Also, on page 2 of Exhibit "C" (Complaint filed in the Underlying Trademark Action), L&L and Marco-Destin consented to personal jurisdiction in the Southern District of New York.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as L&L's principal place of business is in this district, a substantial part of the events giving rise to this action occurred in this judicial district, and L&L and its attorney and employees are subject to personal jurisdiction in this judicial district.  Furthermore, the actions of L&L's employees and attorney, as described in detail below, have caused losses to Marco-Destin in this judicial district.

## **FACTUAL BACKGROUND**

### *THE UNDERLYING TRADEMARK ACTION*

22.     On or about May 29, 2007, L&L filed suit against Marco-Destin in the Underlying Trademark Action, asserting claims for, among other things, federal trademark and trade dress infringement under the Lanham Act (15 U.S.C. § 1051 *et seq*.), breach of contract, violations of New York General Business Law, and common law unfair competition and services mark infringement, arising from L&L's purported ownership of the WINGS mark and Marco-Destin's use in alleged violation of said ownership rights. *See* Exhibit "C" (Complaint in Underlying Trademark Action).

23.     The allegations of L&L's Complaint against Marco-Destin focused on L&L's affirmative claim of purported ownership rights in the "Wings" mark. L&L's claims against Marco-Destin arose from the purported breach by Marco-Destin of a certain License Agreement dated November 1, 1998 (the "License Agreement"). Pursuant to the License Agreement, L&L purported to give Marco-Destin the right to use its proprietary property in the "Wings" mark and

7

trade dress. L&L alleged that Marco-Destin used the "Wings" mark and trade dress in violation of the License Agreement.

24.     During the course of the Underlying Trademark Action and to support its claims, L&L, under the direction and approval of its officers Shaul Levy and Meir Levy, made repeated misrepresentations to the Court claiming ownership in the "Wings" mark and trade dress, including the following:

  a.      In its Complaint, filed on May 29, 2007, L&L through its attorney Bennett Krasner, asserted that it used and claimed propriety rights in the "Wings" mark and trade dress since as early as March 1978. (Compl., ¶¶ 6, 10, 22, 54).

  b.      L&L's counsel, Bennett Kranser stated in his sworn Declaration filed in opposition to a Motion for Summary Judgment that a store, located on property owned by one of the Defendants in the Underlying Trademark Action "utiliz[ed] ***Plaintiff's mark and trade dress*** after expiration of the License Agreement[.]" (D.E. 23, p. 4) (emphasis added).

  c.      In a sworn affidavit, Ariel Levy, the Vice President of L&L, referred to the "Wings" mark and trade dress as L&L's property. (*See* D.E. 23-2) (referring to WINGS as "***Plaintiff's mark and trade dress***[,]" and that Defendants utilized "***Plaintiff's trade dress***") (emphasis added).

  d.      In its Counter Statement to Defendants' Rule 56.1 Statement, L&L admitted that it "claims to use the unregistered service mark "WINGS" and a decorative trade dress[.]" (D.E. 25, ¶ 5).

### THE THEN-UNKNOWN HISTORY OF
### L&L'S LICENSE FOR WINGS FROM SHEPARD MORROW

25.     At the time of the Underlying Trademark Action, neither Marco-Destin nor the District Court were or could have been aware that L&L was not in fact the true owner of the WINGS trademark.

26.     In contrast to L&L's affirmative claims in the Underlying Trademark Action, L&L was not the owner of the WINGS trademark but had entered into a license with the true owner, Shepard Morrow, on April 29, 1993. L&L was forced to take a license for WINGS from the true owner, Shepard Morrow, because L&L had previously failed in multiple efforts to obtain its own trademark registration for WINGS between 1987 and 1992, because of Shepard Morrow's superior trademark rights.

27.     Each of Shaul Levy, Meir Levy, and Bennett Krasner were personally involved in and have personal knowledge of L&L's failed trademark application efforts of WINGS between 1987 and 1992, and of L&L's negotiation and execution of the WINGS trademark license from Shepard Morrow in 1993. A true and correct copy of the executed version of the Morrow License, with accompanying transmittal correspondence, is attached hereto as Exhibit "D."

### KRASNER'S MISREPRESENTATIONS TO
### THE UNITED STATES PATENT & TRADEMARK OFFICE

28.     In addition to the foregoing misrepresentations, during the course of the Underlying Trademark Litigation, L&L obtained from the PTO, as a result of fraudulent misrepresentations of ownership, a Certificate of Registration dated July 1, 2008, for the "Wings" mark.

29.     On August 29, 2006, Bennett D. Krasner, the attorney and agent of applicant L&L, made the following statement to the PTO: "declares that . . . he/she believes the applicant to be the owner of the trademark/service mark sought to be registered[.]" This statement was knowingly false and was, as determined in the Beach Mart Action, intended to deceive the PTO. At the time

9

this statement was made, L&L and Bennett Krasner knew that another individual, Shepard Morrow, was the owner of the WINGS trademark as applied for. Krasner also knew that L&L's use of that mark was pursuant to a license from Morrow dating from 1993.

30.     On August 29, 2006, Bennett Krasner also made the following statement to the PTO: "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[.]" This statement was knowingly false and was, as determined in the Beach Mart Action, intended to deceive the PTO. At the time this statement was made L&L and Bennett Krasner knew that Morrow, as the owner of the mark applied for, had the right to use the mark in commerce.

31.     On August 29, 2006, Bennett Krasner told the PTO that L&L could claim continuous use of the WINGS service mark dating back to "at least as early as 02/01/1978." This statement was false and misleading, and also omitted critically important facts, because the PTO was not informed that any use of WINGS by L&L in 1978 was at the time infringing Morrow's marks; that all of L&L's use of WINGS after the Morrow License inured to the benefit of Morrow; that any independent trademark rights L&L could claim prior to 1993 were extinguished by the Morrow License; and that since 1993, L&L had been using the WINGS mark as a licensee under the Morrow License and not as a trademark owner. Based upon the foregoing material facts all of which were known to L&L and Bennett Krasner, but withheld from the PTO, the statement that L&L could claim continuous use of the WINGS mark back to 1978 was knowingly false and misleading.

32.     On or about July 30, 2007, in response to a non-final office action from the PTO refusing registration of the WINGS mark, Bennett Krasner represented to the PTO that L&L "has been in continuous high-profiled use of the mark it is seeking registration of for almost 30 years." This statement was knowingly false for the reasons described in paragraphs 26-28 above, and was, as determined in the Beach Mart Case, intended to deceive the PTO. At this time, Bennett Krasner also stated to the PTO that L&L believed Morrow's trademark "is no longer used by its last known owner Shepard Morrow." This statement was knowingly false and was, as recently determined in the Beach Mart Case, intended to deceive the PTO. In making this representation, L&L and Bennett Krasner knew that the true facts were that much of L&L's-claimed thirty years of use had been either infringing or under license from Morrow, and further knew but failed to disclose that L&L's use of WINGS pursuant to the Morrow License constituted use of the mark by Morrow in accordance with 15 U.S.C. § 1055.

33.     On or about February 28, 2008, during the litigation of the Underlying Trademark Action and less than two weeks after the expiration of the last federal registration for the trademark that L&L had licensed from Morrow, Bennett Krasner contacted the PTO as the attorney and agent of applicant L&L. Upon information and belief, Bennett Krasner brought to the attention of the trademark examiner, Ms. Charisma Hampton, the fact that the last Morrow registration had recently expired. Upon information and belief, Krasner again failed to disclose the existence of the Morrow License, and instead of admitting the true facts that L&L was using the mark as licensee of the owner of the now-expired registration, Krasner affirmatively and knowingly misrepresented to the trademark examiner that Morrow had abandoned rights in his WINGS marks through non-use. The Certificate was issued based upon L&L's counsel's false representations to the PTO that "no other person, firm, corporation, or association has the right to use the [WINGS] mark in

11

commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[,]" and that L&L Wings could claim continuous use of the WINGS service mark dating back to "at least as early as 02/01/1978."

34.     In reliance on Bennett Krasner's affirmative misrepresentations on behalf of L&L, which were knowingly false, and which were intended to deceive the PTO, the PTO, being so deceived, issued to L&L on July 1, 2008, the federal trademark registration for WINGS, Reg. No. 3,488,144.

### KRASNER'S AND L&L'S MISREPRESENTATIONS TO THE US COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

35.     During the pendency of L&L's motion for summary judgment, L&L, through its attorney Bennett Krasner and under the direction and control of Meir Levy, Shaul Levy, and Ariel Levy caused the fraudulently-obtained July 1, 2008 Registration Certificate to be presented to the Court in support of L&L's trademark infringement claims against Marco-Destin.

36.     Specifically, L&L, acting through attorney Bennett Krasner and with the knowledge and authority of Shaul Levy, Meir Levy, and Ariel Levy, presented the July 1, 2008 Certificate of Registration for WINGS to the Court as evidence of its ownership in the "Wings" mark, although each of L&L, Bennett Krasner, Shaul Levy, Ariel Levy, and Meir Levy all knew that L&L's only lawful rights in the "Wings" mark were that of a mere licensee of Shepard Morrow.

37.     L&L, acting through Bennett Krasner, Shaul Levy, Ariel Levy, and Meir Levy intended to deceive the Court by providing the July 1, 2008 Registration Certificate to the Court in support of L&L's trademark infringement claims against Marco-Destin.

38.     In addition to its false claims of ownership, throughout the Underlying Trademark Litigation, L&L intentionally concealed the existence of its License Agreement with Shepard Morrow, which merely gave L&L rights to use the "Wings" mark as a licensee. L&L, through its counsel, falsely alleged that it had proprietary rights in the "Wings" mark and trade dress since as early as March 1978.

39.     L&L, through its officers and directors and attorney as alleged herein, knew of the false misrepresentations, concealments, and false information and statements made to the Court and Plaintiff.

40.     L&L, through its officers and directors and attorney as alleged herein, knew that the Certificate of Registration it presented to the Court in support of its claims in the Underlying Trademark Litigation was obtained as a result of false statements of ownership in the "Wings" mark.

41.     On the basis of L&L's fraudulently-obtained Registration Certificate, the Court on December 16, 2009 in the Underlying Action found Marco-Destin to be liable at summary judgment on L&L's claim for trademark infringement. A true and correct copy of the liability judgment in the Underlying Action (the "Liability Order") is attached hereto as Exhibit "E."

42.     L&L's misrepresentations, concealments, and other fraudulent acts, through the Defendants (its officers and directors and attorney as alleged herein), were material and seriously affected the integrity of the judicial proceedings in the Underlying Trademark Litigation and the Court's ability to adjudicate the case. Furthermore, L&L, through its officers and directors and attorney as alleged herein, knowingly and intentionally presented to the Court a Certificate of Registration that L&L had obtained by making false statements to the PTO in connection with L&L's false claim of ownership of the mark WINGS.

43.     L&L, through its officers and directors and attorney as alleged herein, knowingly and purposefully committed the fraudulent acts described above to enforce rights in the "Wings" mark that it did not possess and mislead the Court into ruling in its favor.

44.     L&L, through its officers and directors and attorney as alleged herein, knew that the Court and Marco-Destin would rely on its misrepresentations, concealments and other fraudulent conduct, as shown by the rulings of the Court and presentations of the case by both L&L and Marco-Destin.

45.     The Court and Marco-Destin did in fact rely upon and were clearly mislead by L&L's misrepresentations, concealments, and other fraudulent conduct, as demonstrated by the Court's rulings and the Settlement Order.

46.     The Court and Marco-Destin were as a matter of law and fact justified in relying on L&L's misrepresentations, concealments and other fraudulent conduct, as evidenced by the Court's rulings and the Settlement Order.

### THE DAMAGING IMPACT OF L&L'S FRAUD ON THE COURT AS ORCHESTRATED AND EFFECTED BY THE CONDUCT OF SHAUL LEVY, MEIR LEVY, ARIEL LEVY, AND BENNETT KRASNER

47.     As a direct result of L&L's fraudulent conduct through its officers and directors and attorney as alleged herein, the integrity of the judicial system was compromised. The Defendants, as agents of L&L, engaged in this fraudulent conduct to defraud the PTO, this District Court and Marco-Destin.  Furthermore, through this conduct, which implicated its attorney, L&L tampered with the administration of justice and violated the public's right to impartial and fair judicial proceedings.

48.     As further direct and proximate cause of L&L's fraudulent conduct through its officers and directors and attorney as alleged herein, Marco-Destin was induced to enter into the Settlement Order, Exhibit A hereto, which required it to pay to L&L monies that L&L was not

entitled to and prevented it from using a trademark to which L&L had no ownership rights in. Marco-Destin was also required to expend thousands of dollars to comply with the Settlement Order and cease using the "Wings" mark.

49.     The District Court in the Underlying Trademark Action relied on L&L's various misrepresentations and omissions, and the July 1, 2008 Certificate of Registration, to conclude that L&L "own[ed] the mark, and that [L&L] has the exclusive right to use the mark in commerce." The July 1, 2008 Certificate of Registration and L&L's other fraudulent misrepresentations ultimately lead the Court to grant summary judgment in L&L's favor on both liability for trademark infringement and damages.

50.     As a result of the Court's orders granting L&L's motions for summary judgment on both liability for trademark infringement and damages, and without disclosing the true nature of L&L's trademark rights or the fact that L&L obtained its July 1, 2008 Registration Certificate for WINGS through fraud, L&L induced Marco-Destin to enter into the Settlement Order on February 15, 2011, to fully and finally resolve all of their disputes arising in, out of, or relating to the Underlying Trademark Action.

51.     Pursuant to the Settlement Order, Marco-Destin and its affiliate/co-defendants were required to pay L&L a total amount of $3,500,000.00 (the "Settlement Amount"). Marco-Destin was also required to cease using the "Wings" mark and trade dress. The Settlement Order procured by L&L's fraud on this Court also contained release provisions that, according to L&L, purport to prohibit Marco-Destin from bringing an action against L&L's officers, directors and attorneys.

### THE CONSPIRACY OF THE LEVYS AND KRASNER, THROUGH L&L, TO DEFRAUD MARCO-DESTIN

52.     All of the foregoing misrepresentations and material omissions by L&L, its attorneys, officers and directors, as alleged in paragraphs 19-48, are part and parcel of the scheme

to defraud, agreed to by Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner in order to advance and profit from a fraudulent scheme which claimed exclusive ownership rights in and to the WINGS trademark, which ultimately resulted in injury and damage to Marco-Destin including through entry of summary judgment and the Settlement Order.

53.     Specifically, including as set forth herein in paragraphs 19-48 above, each of Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner agreed to pursue a strategy to fraudulently cement L&L's claim to trademark rights in WINGS as against Marco-Destin, notwithstanding their actual knowledge of the Morrow License under which L&L licensed Morrow's WINGS trademark in 1993, which was never terminated.

54.     Specifically, including as set forth herein in paragraphs 19-48 above, upon information and belief, each of Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner each took affirmative actions in furtherance of this agreement, including:

      a.      Shaul Levy and Meir Levy authorized the filing of trademark litigation by L&L against Marco Destin on or about May 29, 2007;

      b.      Shaul Levy and Meir Levy authorized the filing of L&L's application for federal registration of the WINGS trademark on or about August 29, 2006;

      c.      Bennet Krasner filed and prosecuted on behalf of L&L its application for federal registration of the WINGS trademark between 2006 and 2008;

      d.      Bennet Krasner filed and pursued claims for and on behalf of L&L, against Marco-Destin in the Underlying Action, that were predicated on L&L's claimed trademark rights in the WINGS mark;

e.     Bennett Krasner and Ariel Levy submitted sworn declarations and a copy of L&L's Certificate of Registration, to the Court in the Underlying Trademark Action in order to advance L&L's trademark infringement claims against Marco-Destin; and

f.     Shaul Levy and Meir Levy, directing and controlling L&L, and with the participation of attorney Bennett Krasner and L&L's officer Ariel Levy, caused Marco-Destin to be induced to agree to the Settlement Order requiring payment to L&L of damages of $3,500,000 and permanently enjoining Marco-Destin's "future use of Plaintiffs [L&L's] "Wings" mark (the "Mark")."

55.     Each of Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner intentionally and knowingly participated in the conspiracy to deceive and defraud the District Court and Marco Destin with respect to L&L's claim of trademark ownership of the WINGS mark, given their actual knowledge of the Morrow License under which L&L licensed Morrow's WINGS trademark in 1993, which was never terminated.

56.     Each of Shaul Levy, Meir Levy, Ariel Levy, and Bennett Krasner, through their agreement to and participation in the foregoing conspiracy, obtained a personal and individual benefit as a result of the purported release from liability provided in the Settlement Order obtained by L&L in the Underlying Trademark Action.

57.     The conspiracy of Shaul Levy, Meir Levy, Ariel Levy, and attorney Bennett Krasner to deceive and defraud the District Court and Marco Destin caused losses to Marco-Destin in excess of $3,500,000.

### MARCO-DESTIN'S DISCOVERY OF L&L'S FRAUDULENT CONDUCT AS A RESULT OF THE OUTCOME OF THE BEACH MART LITIGATION

58.     Later in 2011 and after the Settlement Order was entered, another one of L&L's licensees, Beach Mart, Inc. ("Beach Mart") commenced an action in the United States District

17

Court for the Eastern District of North Carolina, against L&L, to wit: the Beach Mart Case, related to the use of the trademark "Wings."

59.     After nearly a decade of litigation, on or about November 16, 2020, the Beach Mart Case went to trial and the jury rendered a verdict in Beach Mart's favor on all counts. The jury specifically found that Shepard Morrow, and not L&L, owned the rights to the "Wings" mark, and that L&L's license with Morrow had not been terminated. During the Underlying Trademark Litigation, L&L did not disclose to the Court or Marco-Destin that it had obtained rights in the "Wings" mark as a licensee of Shepard Morrow.

60.     On or about March 29, 2021, the Court in the Beach Mart Case entered its Final Judgment (Exhibit "B" hereto) ordering, adjudging and decreeing that L&L made misrepresentations of material fact with the registration of the "Wings" marks with the PTO, that L&L had acted fraudulently in its dealings with Beach Mart, that L&L had never owned the WINGS trademark and that it had violated the North Carolina Unfair and Deceptive Trade Practices Act in so doing.

61.     Marco-Destin only first became aware of L&L's fraudulent representations of trademark ownership and L&L's true position as a licensee of Morrow after Marco-Destin learned of the jury's verdict in the Beach Mart Case and the Court's Final Judgment dated March 29, 2021.

62.     Specifically, through the publication of the Final Judgment dated March 29, 2021, giving effect to and confirming the jury's determination at verdict, Marco-Destin finally learned that it had been proven, by "clear and convincing evidence," that L&L knowingly made false representations of material fact with an intent to deceive to the United States Patent and Trademark Office in 2006, 2007, and/or 2008, resulting in the issuance of federal trademark Registration No. 3,458,144 (the" '144 Registration").

18

63.     Further and specifically, through the publication of the Final Judgment dated March 29, 2021, giving effect to and confirming the jury's determination at verdict, Marco-Destin learned that "all right, title, and interest in and to the WINGS trademark for use in connection with retail clothing stores was owned by Shepard R. Morrow in April of 1993 when L&L Wings, Inc. and Shepard R. Morrow entered into the April 29, 1993, license agreement for the use by L&L Wings, Inc. of the WINGS mark[,]" and that such rights were not owned by L&L as Bennett Krasner and L&L claimed in the Underlying Trademark Action.

64.     Further and specifically, through the publication of the Final Judgment dated March 29, 2021, giving effect to and confirming the jury's determination at verdict, Marco-Destin learned that "the April 29, 1993, trademark license between Shepard R. Morrow and L&L Wings, Inc. (the "Morrow License") remains in effect and has not terminated."

65.     But for the entry of the Final Judgment in the Beach Mart Case, Marco-Destin could not have known of or have discovered the underlying facts of L&L's fraud or of Morrow's true ownership of the WINGS mark and L&L's position as a licensee, including through the exercise of reasonable diligence. Upon information and belief, even if Marco-Destin had pursued discovery of L&L's fraud upon the revelation of the Morrow License in 2013, Marco-Destin could not have obtained the outcome as revealed in the Final Judgment any sooner than did Beach Mart. Upon further information and belief, while Beach Mart was pursuing the Final Judgment that was finally obtained in March 2021, which determined the facts underlying L&L's fraud as alleged herein, Marco-Destin believed that it would not have been reasonable to institute duplicative and parallel proceedings against L&L until the Beach Mart Case was resolved. Indeed, to await the outcome of the Beach Mart Case would be the only prudent thing to do, as the Beach Mart Case was before a federal District Court which would determine the same issues: whether L&L committed fraud

19

before the PTO and its licensees and whether L&L was truly the licensee of Morrow and not the trademark owner.

66.    Upon the revelation of facts set forth in the Final Judgment, it is clear to Marco-Destin that L&L instituted the Underlying Trademark Litigation to enforce ownership rights in the "Wings" mark that it did not possess. Throughout the duration of the Underlying Trademark Litigation, L&L misrepresented on numerous occasions to this Court and Marco-Destin that it had ownership and proprietary rights in the "Wings" mark and trade dress, repeatedly asserting claims to ownership in such mark.

67.    As a result of the foregoing, L&L, through its officers and attorney, has committed a fraud on the Court and Marco-Destin is entitled to sanctions to redress the losses sustained and relief from the releases in the Settlement Order that improperly benefit the Defendants as a result of L&L's fraud on the Court and Marco-Destin, which releases should be vacated pursuant to Fed. R. Civ. P. 60(d).

## COUNT ONE

### Fraud on the Court

*As to Defendants Bennett Krasner, Shaul Levy, Ariel Levy, and Meir Levy.*

68.    All of the preceding paragraphs are re-alleged and incorporated herein by reference as if set forth fully herein.

69.    L&L's officers, directors and agents, Shaul Levy, Ariel Levy, and Meir Levy, and L&L's attorney Bennett Krasner, instituted the Underlying Trademark Litigation to enforce ownership rights in the "Wings" mark that L&L did not possess. Throughout the duration of the Underlying Trademark Litigation, L&L through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and attorney Bennett Krasner, misrepresented on numerous occasions to

20

this Court and Marco-Destin that it had ownership and proprietary rights in the "Wings" mark and trade dress, repeatedly asserting claims to ownership in such mark.

70.      In addition to its false claims of ownership, throughout the Underlying Trademark Litigation, L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and attorney Bennett Krasner, knowingly and intentionally concealed the existence of a License Agreement with Shepard Morrow, which merely gave L&L rights to use the "Wings" mark as a licensee. L&L, through its counsel, falsely alleged that it had proprietary rights in the "Wings" mark and trade dress since as early as March 1978.

71.      L&L, through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and attorney Bennett Krasner, presented as evidence of its ownership rights in the "Wings" mark a Certificate of Registration it obtained from the PTO. In order to obtain the Certificate of Registration, L&L's, through its counsel Bennett Krasner, knowingly made false representations to the PTO  that "no other person, firm, corporation, or association has the right to use the [WINGS] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[,]" and that L&L could claim continuous use of the WINGS service mark dating back to "at least as early as 02/01/1978." L&L through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, presented the Certificate of Registration to the Court as evidence of its ownership in the "Wings" mark, knowing that its only rights in the "Wings" mark were that of a licensee of Shepard Morrow.

72.      L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, knew that the Certificate of Registration it presented to the Court in support of

its claims in the Underlying Trademark Litigation was obtained as a result of intentional false statements of ownership in the "Wings" mark.

73.     Each defendant (a) knowingly caused L&L to pursue its frivolous claims by knowingly making false representations of material fact and omitting material facts in support of L&L's Complaint in the Underlying Trademark Action, (b) improperly influenced this Court in its decision to enter summary judgment in favor of L&L by knowingly making or causing to be made false representations of material fact and omissions of material facts, and submitting a fraudulently-obtained trademark registration in support of the false claim, and (c) unfairly, through those fraudulent means, hampered the timely discovery and presentation of a complete defense by Marco-Destin's based on the existence of the Morrow License.

74.     As a result of these actions, each of the defendants perpetrated a fraud on the Court with the active participation of an officer of the Court (attorney Bennett Krasner) who owed this Court juridical duties and loyalty requiring integrity and honesty when dealing with the Court, so that the judicial machinery could not perform in the usual manner its impartial task of adjudging the Underlying Trademark Action.

75.     By knowingly making false misrepresentations of material facts and omissions of material facts to this Court, with the willful and knowing substantial assistance, approval and support of L&L's defendant officers, attorney Bennett Krasner knowingly and willfully violated his juridical duties of integrity and honesty owed to this Court, thereby committing fraud on the court on behalf of his client, L&L, and thus successfully procuring by fraud interlocutory orders granting summary judgment and the Settlement Order.

76.     The fraud perpetrated by the defendants, including indirectly through the fraud on the PTO, was directed at the Court itself.

22

77.    The fraudulent evidence and fraudulently-obtained PTO registration not only deceived Marco-Destin and caused it significant losses in payments pursuant to the Settlement Order and attorneys' fees, but because this Court relied on them as well, the Court was defiled by the carefully planned scheme to defraud that was executed by the defendants with the direct participation of an officer of the court.

78.    Thus, this Court has the power to grant the equitable relief sough in this case, as there is no adequate remedy at law to relieve Marco-Destin from the Settlement Order, including the releases in favor of the defendants herein contained therein, and the orders granting summary judgment in favor of L&L in the Underlying Trademark Action.

## COUNT TWO

### Fraud

#### *As to Defendants Bennett Krasner, Shaul Levy, Ariel Levy, and Meir Levy.*

79.    All of the preceding paragraphs from 19 to 64 are re-alleged and incorporated herein by reference as if set forth fully herein.

80.    L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, instituted the Underlying Trademark Litigation to enforce ownership rights in the "Wings" mark that L&L did not possess. Throughout the duration of the Underlying Trademark Litigation, L&L through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, misrepresented on numerous occasions to the District Court and Marco-Destin that it had ownership and proprietary rights in the "Wings" mark and trade dress, repeatedly asserting claims to ownership in such mark.

81.    In addition to its false claims of ownership, throughout the Underlying Litigation, L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner,

intentionally concealed the existence of a License Agreement with Shepard Morrow, which merely gave L&L rights to use the "Wings" mark as a license. L&L, through its counsel, falsely alleged that it had proprietary rights in the "Wings" mark and trade dress since as early as March 1978.

82.     L&L, through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, presented as evidence of its ownership rights in the "Wings" mark a Certificate of Registration it obtained from the PTO. In order to obtain the Certificate of Registration, L&L's, through its counsel Bennett Krasner, made false representations to the PTO that "no other person, firm, corporation, or association has the right to use the [WINGS] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[,]" and that L&L could claim continuous use of the WINGS service mark dating back to "at least as early as 02/01/1978." L&L through its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, presented the Certificate of Registration to the Court as evidence of its ownership in the "Wings" mark, knowing that its only rights in the "Wings" mark were that of a licensee of Shepard Morrow.

83.     L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, knew of the false misrepresentations, concealments, and false information and statements made to the Court and Plaintiff.

84.     L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, knew that the Certificate of Registration it presented to the Court in support of its claims in the Underlying Litigation was obtained as a result of false statements of ownership in the "Wings" mark.

24

85. The misrepresentations, concealments and other fraudulent acts of L&L and L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, were material and seriously affected the integrity of the judicial proceedings in the Underlying Litigation and the Court's ability to adjudicate the case. Furthermore, L&L knowingly and intentionally presented to the Court a Certificate of Registration that it obtained by making false statements to the PTO.

86. L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, knowingly and purposefully committed the fraudulent acts described above to enforce rights in the "Wings" mark that it did not possess and mislead the Court into ruling in its favor.

87. L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, knew that the Court and Marco-Destin would rely on its misrepresentations, concealments and other fraudulent conduct, as shown by the rulings of the Court and presentations of the case by both L&L and Marco-Destin.

88. The Court and Marco-Destin did in fact rely upon and were clearly mislead by the misrepresentations, concealments, and other fraudulent conduct of L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, as demonstrated by the Court's rulings and the Liability Judgment and the Settlement Order.

89. The Court and Marco-Destin were as a matter of law and fact justified in relying on the misrepresentations, concealments and other fraudulent conduct of L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, as evidenced by the Court's rulings and the Liability Order and the Settlement Order.

WBD (US) 58884440v2

90.     As a direct result of the fraudulent conduct of L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, the integrity of the judicial system was compromised. L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, engaged in this fraudulent conduct to defraud the Court and Marco-Destin. Furthermore, through this conduct, L&L's officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, tampered with the administration of justice and violated the public's right to impartial and fair judicial proceedings.

91.     As further direct and proximate cause of the fraudulent conduct of L&L and its officers, directors and agents, Shaul Levy, Ariel Levy, Meir Levy, and Bennett Krasner, Marco-Destin was induced to enter into the Settlement Order, which required it to pay L&L monies it was not entitled to and prevented it from using a trademark to which L&L had no ownership rights in. Marco-Destin was also required to expend thousands of dollars to comply with the Settlement Order and cease using the "Wings" mark.

## **PRAYER FOR RELIEF**

WHEREFORE, Marco-Destin respectfully requests that this Court grant the following relief:

(a)     Find that the Settlement Order and prior interlocutory Orders entered in the Underlying Action, which were obtained through the acts of the agents of L&L and through L&L's fraud on this Court, are subject to being vacated under Rule 60(d);

(b)     Enter sanctions for fraud on the court pursuant to Count I against the Defendants, jointly and severally, sufficient to compensate Marco-Destin for the losses incurred as a result of the Settlement Order, including the payments made totaling

$3,500,000 and the fees and costs incurred in having to defend the Underlying

Trademark Action;

(c)     Award damages to Marco-Destin pursuant to Count II against Defendants, jointly

and severally, for the fraud and conspiracy to commit fraud as alleged herein, in

an amount to be determined at trial, in excess of $3,500,000;

(d)     Award Marco-Destin its attorneys' fees and costs, as permitted by law;

(e)     Award Marco-Destin its costs of suit; and

(f)     For such further relief as the Court deems just and proper.


### Jury Demand

Plaintiff hereby demands a trial by jury on issue so triable.


Date:   October 4, 2022                         /s/ Anthony A. Coppola
        New York, New York                      Anthony A. Coppola
                                                WOMBLE BOND DICKINSON (US-LLP)
                                                950 Third Avenue
                                                24th Floor
                                                New York, New York 10022
                                                (332) 258-8400
                                                anthony.coppola@wbd-us.com

                                                Charles E. Burke *(pro hac vice pending)*
                                                WOMBLE BOND DICKINSON (US-LLP)
                                                555 Fayetteville Street
                                                Suite 1100
                                                Raleigh, North Carolina 27601
                                                (919) 755-2100
                                                charles.burke@wbd-us.com

                                                Stephen Shaw *(pro hac vice pending)*
                                                WOMBLE BOND DICKINSON (US-LLP)
                                                300 N. Greene Street
                                                Suite 1900
                                                Greensboro, North Carolina 27401
                                                (336) 574-8052
                                                stephen.shaw@wbd-us.com

WBD (US) 58884440v2