UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                  :

L & L WINGS, INC.,                :

          Plaintiff,       :

          v.                  :

MARCO-DESTIN, INC., 1000 HIGHWAY  :  07 Civ. 4137(BSJ)(GWG)
98 EAST CORP., PANAMA SURF &    :
SPORT, INC., and E & T, INC.,   :     **Order**

          Defendants.  :

------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/16/09

     On May 28, 2007, Plaintiff L & L Wings, Inc. ("Wings"
or "Plaintiff") filed suit against Defendants Marco-Destin,
Inc., 1000 Highway 98 East Corp., Panama Surf & Sport,
Inc., and E & T, Inc. (collectively "Defendants") alleging
breach of contract, trademark infringement under the Lanham
Act, violations of the New York General Business Law, and
common law service mark infringement and unfair
competition.  On September 4, 2008, Plaintiff filed a
Motion for Partial Summary Judgment.  On October 15, 2008,
Defendants filed a Cross Motion for Partial Summary
Judgment.  For the reasons set forth below, Plaintiff's
Motion for Partial Summary Judgment is GRANTED and

Defendants' Cross Motion for Partial Summary Judgment is
DENIED.

## BACKGROUND[1]

Plaintiff L & L Wings, a South Carolina corporation,
is the owner of a chain of retail stores operating under
the trademark "Wings."  The stores specialize in the sale
of beachwear, souvenirs, bathing suits, sunglasses, and
related items.  (Pl.'s Rule 56.1 Stmt. ¶ 1; Def.'s Rule
56.1 Stmt. ¶ 1.)  Plaintiff has, at various times since
1978, operated and managed "Wings" stores in South
Carolina, Florida, North Carolina, Massachusetts, Texas,
California, New York, Tennessee, New Jersey, and Alabama.
(Pl.'s Rule 56.1 Stmt. ¶ 3; Def.'s Rule 56.1 Stmt. ¶ 3.)

Defendants Marco-Destin Inc. ("Marco-Destin"), 1000
Highway 98 East Corp. ("Highway 98"), and Panama Surf &
Sport, Inc. ("Panama") are each Florida corporations.
Defendant E & T Inc. ("E & T") is a South Carolina

---

[1] The facts stated here are drawn from Plaintiff and Defendants' Local
Rule 56.1 statements. Under Local Civil Rule 56.1(c), "material facts
set forth in the statement required to be served by the moving party
will be deemed to be admitted for purposes of the motion unless
specifically controverted." See Giannullo v. City of New York, 322
F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to
controvert a fact so set forth in the moving party's Rule 56.1
statement, that fact will be deemed admitted."). Further, Defendants
rely extensively on affidavits submitted by Dror Levy asserting "facts"
which Levy has no personal knowledge of. Under Fed. R. Civ. P. 56(3),
these statements are hearsay and will not be considered by this Court
for the purposes of this motion. See Hollander v. Am. Cynamid Co., 172
F.3d 192, 198 (2d Cir. 1999) (upholding district court's rejection of
an affidavit which did not comply with Rule 56(e)).

2

corporation. While there is some dispute regarding the exact nature of the four Defendants relationship, Defendants contend that Marco-Destin and E & T operate retail stores selling beachwear and accessories, Panama provides senior management consulting services to Marco-Destin and E & T, and Highway 98 is a landlord to Marco-Destin. (Def's Opp'n Mem. At 38-39). According to Eli Tabib, owner of TLE Management, LLC, each of the defendants is owned by TLE Management, LLC. (Pl.'s Rule 56.1 Stmt. ¶ 4; Def.'s Rule 56.1 Stmt. ¶ 4.) Since November 1, 1998, the four defendants have shared nearly identical corporate officers, directors and main office employees. (Pl.'s Rule 56.1 Stmt. ¶ 6; Def.'s Rule 56.1 Stmt. ¶ 6.)

In 1977, Plaintiff's principals, Shaul and Meir Levy, opened their first beachwear and accessories store in Myrtle Beach, South Carolina, which they named "Wings" (the "Mark"). (Pl.'s Rule 56.1 Stmt. ¶ 9; Def.'s Rule 56.1 Stmt. ¶ 9.) Plaintiff has also used a trade dress consisting of a unique wave sculpture design highlighted with a colored neon light combination (the "Trade Dress") to be placed on the roof of some Wings stores. (Pl.'s Rule 56.1 Stmt. ¶ 11; Def.'s Rule 56.1 Stmt. ¶ 11.)

Prior to 1998, Plaintiff's principals, Shaul and Meir Levy, owned 50% of three of the four Defendant

3

corporations, namely Marco-Destin, Highway 98, and Panama. The remaining 50% interest of these companies was owned by Eli Tabib.  (Pl.'s Rule 56.1 Stmt. ¶ 16; Def.'s Rule 56.1 Stmt. ¶ 16.)  In 1998, Shaul Levy, Meir Levy, and Eli Tabib mutually agreed to redefine their business relationships and transfer 100% ownership of Marco-Destin, Highway 98, and Panama to Eli Tabib. (Pl.'s Rule 56.1 Stmt. ¶ 17; Def.'s Rule 56.1 Stmt. ¶ 17.)   Mr. Tabib retained the New York law firm of Moses & Singer LLP to represent him during this transaction.  (Pl.'s Rule 56.1 Stmt. ¶ 19; Def.'s Rule 56.1 Stmt. ¶ 19.)  Mr. Tabib is an experienced businessman who has built numerous companies from the ground up in areas such as retail, real estate, and wedding/reception services.  Mr. Tabib also owns a professional soccer team in Israel.   (Pl.'s Rule 56.1 Stmt. ¶ 20; Def.'s Rule 56.1 Stmt. ¶ 20.)

Between November 1, 1998 and February 17, 2000, the parties' principals and respective counsels negotiated the agreements and documentation to formalize their business relationship.  These included a Purchase Agreement, an Assignment/Surrender and Assumption of Leases, Promissory Notes, Consulting Agreements, and a Licensing Agreement, dated February 17, 2000.  (Pl.'s Rule 56.1 Stmt. ¶ 25; Def.'s Rule 56.1 Stmt. ¶ 25.)

4

The Licensing Agreement (the "Agreement") details the Defendants' rights to use Plaintiff's Mark and Trade Dress in connection with the sale of beachwear and accessories at Defendants' business establishments. (Pl.'s Rule 56.1 Stmt. ¶ 26; Def.'s Rule 56.1 Stmt. ¶ 26.) During the course of negotiations, several different finite periods for the license were proposed. (Pl.'s Rule 56.1 Stmt. ¶ 29; Def.'s Rule 56.1 Stmt. ¶ 29.) The final Licensing Agreement included a term of eight years, effective from November 1, 1998 through October 31, 2006. (Pl.'s Rule 56.1 Stmt. ¶ 30; Def.'s Rule 56.1 Stmt. ¶ 30.)

On February 17, 2000, counsel for Shaul Levy, Meir Levy, and Eli Tabib held a closing for each of the agreements at the offices of Moses & Singer in New York City. (Pl.'s Rule 56.1 Stmt. ¶ 32; Def.'s Rule 56.1 Stmt. ¶ 32.) Shaul Levy and Eli Tabib were in Miami, Florida on February 17, 2000, at the time of the closing. They each participated in the closing from the office in the Wings' Miami store while in telephone contact with their respective counsel in New York. (Pl.'s Rule 56.1 Stmt. ¶ 33; Def.'s Rule 56.1 Stmt. ¶ 33.) Eli Tabib signed the signature page for each agreement on behalf of the four Defendant corporations and returned the documents by facsimile. Shaul Levy signed the signature page of each

agreement on behalf of the Plaintiff except for the
Licensing Agreement, which was inadvertently overlooked, on
behalf of the Plaintiff and returned the documents by
facsimile as well. (Pl.'s Rule 56.1 Stmt. ¶ 35; Def.'s
Rule 56.1 Stmt. ¶ 35.) After realizing the oversight, Meir
Levy signed the Licensing Agreement in New York later that
day. (Pl.'s Rule 56.1 Stmt. ¶ 36; Def.'s Rule 56.1 Stmt. ¶
36.)

At the time the documents were signed, Eli Tabib's
attorney and accountant were both aware that the Licensing
Agreement contained a termination date of October 31, 2006.
(Pl.'s Rule 56.1 Stmt. ¶ 39; Def.'s Rule 56.1 Stmt. ¶ 39.)
On March 8, 2000, Moses & Signer sent Eli Tabib and his
accountant a closing binder of all of the executed
documents, including the fully executed Licensing
Agreement. (Pl.'s Rule 56.1 Stmt. ¶ 40; Def.'s Rule 56.1
Stmt. ¶ 40.)

During the period of the Licensing Agreement,
Defendants Marco-Destin and E & T used the Mark and/or
Trade Dress in connection with the sale of beachwear and
accessories in twelve Wings stores, eleven of which
currently remain in operation. Defendants Marco-Destin and
E & T also used the Mark and/or Trade Dress for outdoor
signage, shopping bags, product hang tags, TV signs, and

6

boogie boards. (Pl.'s Rule 56.1 Stmt. ¶ 43; Def.'s Rule 56.1 Stmt. ¶ 43.) During that same period, Plaintiff fully performed its obligations under the Licensing Agreement. (Pl.'s Rule 56.1 Stmt. ¶ 47; Def.'s Rule 56.1 Stmt. ¶ 47.)

According to its written terms, the Licensing Agreement terminated on October 31, 2006. (Pl.'s Rule 56.1 Stmt. ¶ 49; Def.'s Rule 56.1 Stmt. ¶ 49.) On both October 10 and November 9, 2006, Plaintiff reminded Defendant Marco-Destin of the written termination date and advised that Defendants were required to remove signage and all items bearing the Mark and Trade Dress. (Pl.'s Rule 56.1 Stmt. ¶ 50-51; Def.'s Rule 56.1 Stmt. ¶ 50-51.) On February 27, 2006, Plaintiff advised all Defendants that if Defendants did not cease using the Mark and Trade Dress, Plaintiff would pursue legal remedies. (Pl.'s Rule 56.1 Stmt. ¶ 52; Def.'s Rule 56.1 Stmt. ¶ 52.)

Defendants continued to use the Mark and Trade Dress in at least eleven stores in connection with the sale of beachwear and accessories after October 31, 2006. (Pl.'s Rule 56.1 Stmt. ¶ 53; Def.'s Rule 56.1 Stmt. ¶ 53.) After October 31, 2006, Plaintiff received several communications from dissatisfied customers of Defendants' Wings stores, mistakenly believing Defendants' stores to be owned by

Plaintiff.  (Pl.'s Rule 56.1 Stmt. ¶ 54; Def.'s Rule 56.1
Stmt. ¶ 54.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure
provides that a court shall grant a motion for summary
judgment "if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(c).  "The party seeking summary judgment bears the
burden of establishing that no genuine issue of material
fact exists and that the undisputed facts establish their
right to judgment as a matter of law." Rodriguez v. City of
New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  The
substantive law governing the case will identify those
facts that are material and "[o]nly disputes over facts
that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).

In determining whether a genuine issue of material
fact exists, a court must resolve all ambiguities and draw
all reasonable inferences against the moving party.
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

Plaintiff contends that it "is entitled to summary judgment on its breach of contract claim, trademark infringement claim under the Lanham Act, and claims under New York statutory and common law, as well as on Defendants' counterclaims, as a matter of law." (Pl. Mem. at 9.) The Court agrees.

## I. Breach of Contract Claim

In Count VI of the Complaint, Plaintiffs allege that Defendants breached the Licensing Agreement executed on February 17, 2000. To establish a claim for breach of contract under New York law, Plaintiff must demonstrate (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

First, it is clear that a valid contract existed between the parties. It is undisputed that the Licensing

Agreement was validly executed by the parties on February 17, 2000. Furthermore, Section 15 of the Agreement states that, "This Agreement shall be binding upon the parties and their agents. . . ." (Hertz Decl., Ex. A). Meir Levy signed the Agreement on behalf of the Plaintiff and Eli Tabib signed the Agreement on behalf of each of the four Defendants. Id.

Defendants claim that the Agreement between the parties was invalid or incomplete because "the Licensing Agreement is part of a package of written and oral agreements which exist between the parties. . . ." (Def.'s Opp'n Mem. at 2.) According to Defendants, the relationship between the Plaintiff and Defendants was "operated on the basis of trust" and that "the principals knew their agreements and where they stood, notwithstanding the contents of any documents regarding their partnership." (Id. at 4-5). Specifically, Defendants contend, Shaul Levy assured Eli Tabib that Tabib could continue to use the Mark and Trade Dress in perpetuity regardless of what was stated in the Licensing Agreement. Therefore, Tabib did not read all of the documents and was not aware of the license termination date.

Even if Defendants assertions are taken as true, they do not invalidate the Licensing Agreement or its

10

termination date. "The fundamental, neutral precept of contract interpretation is that agreements are construed in accordance with the parties' intent, and that the best evidence of what parties to a written agreement intend is what they say in their writing." JA Apparel Corp. v. Abboud, 591 F.Supp.2d 306, 338(S.D.N.Y. 2008). In this case, it is undisputed that the Licensing Agreement clearly sets a termination date of October 31, 2006. (Pl.'s Rule 56.1 Stmt. ¶ 49; Def.'s Rule 56.1 Stmt. ¶ 49.) "[M]atters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000).

Defendants' contention that Shaul Levy made assertions to Eli Tabib that contradicted the plain terms of the Agreement does not invalidate the contract. As Section 17 of the Licensing Agreement states, "This Agreement contains the entire agreement between the parties and supersedes all agreements and understandings previously made between the parties relating to its subject matter, all of which have been merged herein." (Hertz Decl., Ex. A). The purpose of this merger clause is to require the full application of the parol evidence rule to bar the introduction of extrinsic evidence to alter, vary, or contradict the terms

11

of the writing. Ixe Banco, S.A. v. MBNA America Bank,
N.A., 2008 WL 650403, *7 (S.D.N.Y. 2008) (citing Jarecki v.
Shung Moo Louie, 95 N.Y.2d 665, 669, 745 N.E.2d 1006, 1009
(2001)). As such, if there is a contradiction between any
alleged agreements made prior to execution of the Agreement
and the plain terms of the Agreement itself, the clear
language of the Agreement controls.

If, as Defendants contend, Shaul Levy told Eli Tabib
that the termination date in the Licensing Agreement had no
legal effect, the Agreement is still valid. Courts in this
jurisdiction have "repeatedly refused to accept the defense
that an agreement should be invalidated merely because one
party induced the other to sign the document by falsely
stating that it had no legal effect." Sotheby's Inc. v.
Dumba, 1992 WL 27043, *6 (S.D.N.Y. 1992). The parties to a
contract are bound by their signatures and may not rely on
oral representations that there is no contract when the
face of the document would indicate otherwise. Id.

The Agreement also may not be invalidated if Eli Tabib
did not read its terms. "A party who enters into a plain
and unambiguous contract cannot avoid it by stating that he
or she misunderstood its terms." If a party had the
opportunity to review the contracts terms, "to not have
read it is gross negligence." Id. at *2; see also

12

Republic Nat. Bank v. Hales, 75 F.Supp.2d 300, 313 –
314 (S.D.N.Y.,1999) ("whether or not a party to an
agreement has actually read and understood all portions of
an agreement, the law generally assumes that he has.");
Humble Oil & Refining Co. v. Gibbered Esso Serv. Station,
Inc., 30 A.D.2d 952, 294 N.Y.S.2d 190, 192 (1st Dep't 1968)
("Since the written instrument contains terms different
from those allegedly orally represented, and [the
sophisticated businessman] is presumed to have read the
writing, he may not claim he relied on the [alleged
misrepresentations]").

Defendants claim that "English is not Mr. Tabib's
native language." (Def.'s Opp'n Mem. at 4). The fact that
Tabib may have needed assistance in understanding the terms
of the Agreement does not "relieve him from an obligation
to seek assistance in reading the documents' terms; his
failure to do so amounts to negligence, which bars him from
asserting his disability as a defense." Sotheby's at *3.
It is undisputed that Tabib retained Moses & Singer LLP to
represent him during the drafting and execution of the
Agreement. (Pl.'s Rule 56.1 Stmt. ¶ 19; Def.'s Rule 56.1
Stmt. ¶ 19.) It is further undisputed that this drafting
took place over more than a year period, during which Moses
& Singer LLP played a key role. (Pl.'s Rule 56.1 Stmt. ¶

25; Def.'s Rule 56.1 Stmt. ¶ 25.)  Tabib was also in

telephone contact with his counsel during the execution of

the Agreement.  (Pl.'s Rule 56.1 Stmt. ¶ 33; Def.'s Rule

56.1 Stmt. ¶ 33.)  Therefore, Tabib had ample opportunity

to consult with counsel regarding the terms of the

Agreement and should have done so if there was any question

as to their legal effect.  See NCR Corp. v. Lemelson

Medical, Educ. and Research Foundation, 2001 WL 1911024, *7

(S.D.N.Y. 2001) (rejecting counterclaims of rescission and

reformation where counterclaimant was represented by

"sophisticated counsel, who had the ability to analyze and

to comprehend the terms" of the agreement, and who "played

a considerable role in drafting the document").

     Second, Plaintiff must show that there was adequate

performance of the contract by the Plaintiff.  Segui at

348.  It is undisputed that Plaintiff fully performed its

obligations under the Licensing Agreement.  (Pl.'s Rule

56.1 Stmt. ¶ 47; Def.'s Rule 56.1 Stmt. ¶ 47.)

     Third, Plaintiff must show that there was a breach of

contract by the Defendants.  Segui at 348.  It is

undisputed that Defendants continued to use the Mark and

Trade Dress in at least eleven stores in connection with

the sale of beachwear and accessories after October 31,

2006.  (Pl.'s Rule 56.1 Stmt. ¶ 53; Def.'s Rule 56.1 Stmt.

14

¶ 53.) As Defendants admit, "Defendants Marco-Destin and E
& T never disputed using the trademarks and trade dress
after the date in the Licensing Agreement. . . ." (Def.
Mem. at 2.) Thus, Plaintiff has shown a breach of the
contract by Defendants.

Fourth, Plaintiff must show that there were damages as
a result of Defendants' breach. Section 8 of the Licensing
Agreement states, "Licensee specifically acknowledges that
the use of the Mark, the name 'Wings' or any Similar Name
and/or the use of Licensor's Trade Dress after the
Termination Date will cause Licensor to suffer irreparable
harm, damages for which would be extremely difficult to
ascertain." (Hertz Decl., Ex. A). To the extent that
Defendants dispute the amount of liquidated damages that
should be assessed under the Agreement, Defendants may
raise such issues at a later proceeding before this Court
on the amount of damages.

Plaintiff's Motion for Partial Summary Judgment on
Count VI of the Complaint is GRANTED and Defendants Cross
Motion for Partial Summary Judgment on this Count IV
DENIED.

## II. **Trademark Infringement Claim under the Lanham Act**

In Count I of the Complaint, Plaintiff alleges that
Defendants committed trademark infringement under the

Lanham Act. A claim of trademark infringement brought under the Lanham Act is analyzed under the two-prong test described in Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993). The test considers (1) whether the plaintiff's mark is entitled to protection, and (2) whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. Gruner, 991 F.2d at 1074.

a. The Mark is entitled to protection

First, Plaintiff's July 1, 2008 Certificate of Registration from the Patent and Trademark Office is *prima facie* evidence "that the mark is registered and valid (i.e., entitled to protection), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F.Supp.2d 448, 454 (S.D.N.Y. 2005); see also Lane Capital Mgmt. v. Lane Capital Mgmt., 15 F. Supp. 2d 389, 394 (S.D.N.Y. 1998) (where plaintiff's mark was granted registration after filing of suit, the Court held that "defendant bears the burden of demonstrating either that plaintiff's mark is invalid or that the use of its own mark is not likely to confuse consumers").

Second, the Mark is inherently distinctive.  "The
strength of a trademark in the marketplace and the degree
of protection it is entitled to are categorized by the
degree of the mark's distinctiveness in the following
ascending order: generic, descriptive, suggestive, and
arbitrary or fanciful."  Gruner, 991 F.2d at 1075;  see
also Abercrombie & Fitch Co. v. Hunting World, Inc., 537
F.2d 4, 9 (2d Cir. 1976).  Arbitrary marks are "inherently
distinctive and are entitled to protection" under the
Lanham Act.  Two Pesos v. Taco Cabana, 505 U.S. 763, 768
(U.S. 1992); see also Marshak v. Sheppard, 666 F. Supp.
590, 600 (S.D.N.Y. 1987) (stating that arbitrary marks
should receive "maximum trademark protection").  A mark is
arbitrary if it has an actual dictionary meaning that does
not describe the goods or services offered under the mark.
See, e.g., Virgin Enters. v. Nawab, 335 F.3d 141, 148 (2d
Cir. 2003) (holding that "Virgin" is an arbitrary mark that
has "no intrinsic relationship whatsoever" with sales of
consumer electronics);  Morningside Group, Ltd. v.
Morningside Capital Group, L.L.C., 182 F.3d 133, 139 (2d
Cir. Conn. 1999) (holding that "Morningside" is an
arbitrary mark as applied to financial investment
services); Marshak, 666 F. Supp. at 600 (S.D.N.Y. 1987)

17

(holding that "Drifters" is an arbitrary mark as applied to a musical group).

In this case, the Plaintiff's stores specialize in the sale of beachwear, souvenirs, bathing suits, sunglasses, and related items. (Pl.'s Rule 56.1 Stmt. ¶ 1; Def.'s Rule 56.1 Stmt. ¶ 1.) Although the term "wings" has a common dictionary meaning, there is nothing about the term that is intrinsically related to beachwear and accessories. Therefore, the Mark is arbitrary and entitled to protection under the Lanham Act. Two Pesos, 505 U.S. at 768.

b. Defendant's use of the Mark is likely to cause consumers confusion

When an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law. Ryan v. Volpone Stamp. Co., 107 F.Supp. 2d 369, 399 (S.D.N.Y. 2000); see also Bowmar Instrument Corp. v. Continental Microsystems, Inc., 497 F. Supp. 947, 959 (S.D.N.Y. 1980) (holding that continued use of a mark after termination of a license constitutes trademark infringement). In such situations, confusion is almost inevitable because consumers have already associated the formerly licensed infringer with the trademark owner. See Volpone Stamp, 107 F.Supp. 2d at 399; see also Church of Scientology International v. Elmira Mission of Church of

<u>Scientology</u>, 794 F.2d 38, 44 (2d Cir. 1986). In this case, it is undisputed that Defendants Marco-Destin and E & T continued to use the Mark and Trade Dress after the termination date in the Licensing Agreement. Therefore, a likelihood of confusion is established as a matter of law.

Furthermore, Plaintiff may establish likelihood of confusion under the test established in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961).[2] "It is evident that the so-called Polaroid factors are more geared towards comparing two distinct, albeit similar, marks. Thus, their application may be unnecessary in the case of an ex-licensee using a previously licensed mark where only one trademark is involved." <u>Volpone Stamp</u>, 107 F. Supp. 2d at 400. Despite this, Plaintiff in this case establishes each of the <u>Polaroid</u> factors in its brief citing undisputed facts. Defendants do not rebut these assertions.

As Plaintiff has established both prongs of the <u>Gruner</u> test, Plaintiff's Motion for Partial Summary Judgment on

---

[2] <u>Polaroid</u> established an eight non-exclusive factor test to determine likelihood of confusion. "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." <u>Star Indus. v. Bacardi & Co.</u>, 412 F.3d 373, 384 (2d Cir. 2005).

Count I of the Complaint is GRANTED and Defendants' Cross Motion for Partial Summary Judgment on Count I is DENIED.

## III.  **New York state and common law claims**

In Count III of the Complaint, Plaintiff contends that Defendants violated N.Y. GEN. BUS. LAW § 350-1 for injury to business reputation or dilution of the distinctive quality of a mark.  To prevail, Plaintiff must show that "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'"  U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001).  As discussed above, Plaintiff's trademark is arbitrary and inherently distinctive, satisfying the first prong of the analysis.

"Dilution by 'blurring' may occur where the defendant uses or modifies the plaintiff's trademark to identify the defendants' goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product."  Id.  New York courts consider six factors to determine whether blurring is likely,[3] the first five of which are "closely analogous"

---

[3] The six factors courts should consider to determine if blurring is likely are: "(1) similarity of the marks, (2) similarity of the products covered by the marks, (3) sophistication of consumers, (4) predatory intent, (5) renown of the senior mark, (6) renown of the junior mark."  Mead Data Cent., Inc. v. Toyota Motor Sales, Inc., 875

20

to the Polaroid factors, which this Court has already determined weigh strongly in favor of the Plaintiff. Paco Sport, Ltd. v. Paco Rabanne Parfums, 86 F. Supp. 2d 305, 330 (S.D.N.Y. 2000).

Defendants argue that there could not been a dilution of the Mark's ability to uniquely identify Plaintiff's products because the beachwear and accessories sold in the parties' establishments are similar, if not identical. Defendants cite to decisions in this Circuit that blurring "*typically* involved the whittling away of an established trademark's selling power through its unauthorized use by others upon dissimilar products." Deere & Co. v. MTD Prods., 41 F.3d 39, 43 (2d Cir. N.Y. 1994) (emphasis added). However, this Circuit has also determined that the anti-dilution statute applies to establishments selling similar or identical products as well. See Nikon, Inc. v. Ikon Corp., 987 F.2d 91, 96 (2d Cir. N.Y. 1993) (holding that the anti-dilution statute "does not preclude competitive products from being covered"); Volkswagen Astiengesellschaft v. Uptown Motors, 1995 WL 605605, *11 (S.D.N.Y.,1995) (finding dilution where services were "similar if not identical"); Frito-Lay, Inc. v. Bachman

F.2d 1026, 1035 (2d Cir. N.Y. 1989). In this case, the sixth factor is not relevant as the mark used by Defendants is identical to Plaintiff's "Wings" Mark.

21

Co., 704 F. Supp. 432, 438 (S.D.N.Y. 1989) (finding dilution where both parties sold nearly identical potato chips).

Tarnishment occurs when a trademark is "linked to products of shoddy quality" or is portrayed in an "unwholesome or unsavory context" and the trademark's reputation and commercial value might be diminished because "the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Deere & Co., 41 F.3d at 43 (2d Cir. 1994). Plaintiffs have cited a number of communications received by Plaintiffs complaining about the quality of products or services at Defendants' stores. (Pl.'s Rule 56.1 Stmt. ¶ 54; Def.'s Rule 56.1 Stmt. ¶ 54.)

Defendants contend that these communications are "inadmissible hearsay contrary to Fed. R. Evid. 802. . . ." (Def. Mem. at 14). However, these communications are not offered for the truth of their contents, but rather to show that patrons expressed confusion regarding the owner of Defendants' establishments. Defendants further contend that such complaints were "de minimis evidence" representing "less than 2.6 one-thousandths of one percent of customers." (Def. Mem. at 34). To prevail on its claim, Plaintiff need only show a "likelihood" of confusion

22

amongst the public.  U-Neek, Inc., 147 F. Supp. 2d at 175.

By citing the communications, Plaintiffs have shown that

confusion is not only likely, but actually occurred.

 In Claim III of the Complaint, Plaintiff also asserts

that Defendants violated N.Y. GEN. BUS. LAW § 133 for use of

a name with intent to deceive.  To prevail, Plaintiff must

show that (1) defendant used the mark, and (2) defendant

acted in bad faith to deceive the public.  Houbigant, Inc.

v. ACB Mercantile (In re Houbigant, Inc.), 914 F. Supp.

964, 984 (S.D.N.Y. 1995) ("New York Courts have held that

the elements of the claim include the intent to deceive the

public and the assumption of the identity of another").

It is undisputed that Defendants Marco-Destin and E & T

continued to use the Mark and Trade Dress after the

termination date in the Agreement, thereby assuming the

identity of another.  Defendants argue that as "hold-over

licensees" that "acted in good faith" believing that the

written termination date would not be enforced, their

conduct was not intentional.  As discussed above,

Defendants were bound by the termination date set in the

Licensing Agreement.  Furthermore, it is undisputed that

Defendants received three notices from Plaintiff reminding

Defendants of the termination date in the Agreement and

instructing them to cease use of the Mark and Trade Dress.

(Pl.'s Rule 56.1 Stmt. ¶ 50-52 Def.'s Rule 56.1 Stmt. ¶ 50-52) By willfully ignoring both the termination date in the Agreement and the notices sent by Plaintiffs, Defendants acted intentionally. As such, Defendants acted in bad faith to deceive the public by using Plaintiff's Mark and Trade Dress in association with the sale of Defendants' products.

Defendants also contend that Plaintiff "must establish that there is significant confusion among the public at large," citing Sung v. Paolucci, 566 N.Y.S.2d 371 (2d Dep't 1991). However, Sung states that Plaintiff must show that use of a mark "threatens" to produce confusion in the public's mind. Id. at 371. As this Court has already found that there was likelihood of confusion and, in some cases, actual confusion by members of the public, the threat of confusion in the public's mind has been established.

In Count IV of the Complaint, Plaintiff alleges that Defendant committed common law service mark infringement. Once a defendant has been shown to have committed infringement under the Lanham Act, "he has necessarily also done so under New York State and common law." Baker v. Parris, 777 F. Supp. 299, 304 (S.D.N.Y. 1991). As this Court has already found Defendants in violation of the

Lanham Act, Defendants have also committed common law
service mark infringement.

In Count V of the Complaint, Plaintiff alleges that
Defendants committed common law unfair competition.  To
succeed on this claim, Plaintiff must demonstrate that (1)
there is actual confusion or likelihood of confusion, and
(2) Defendants have acted in bad faith.  As discussed
previously, Plaintiff has established both elements of this
claim.

Plaintiff's Motion for Partial Summary Judgment on Counts
III, IV, and V of the Complaint is GRANTED and Defendants'
Cross Motion for Partial Summary Judgment on Counts III,
IV, and V is DENIED..

## IV.   Liability of Defendants Highway 98 and Panama

Defendants argue that Defendants Highway 98 and Panama
can not be held liable because they did not individually
use the Plaintiff's Mark or Trade Dress in the conduct of
their businesses.  Defendants contend that Defendant
Highway 98 is a landlord to the Defendant Marco-Destin and
Defendant Panama provides senior management consulting
services to Defendants Marco-Destin and E & T.  (Def.'s
Opp'n Mem. at 38-39).  Plaintiffs argue that the four
Defendants should be considered a "single entity," each

25

held jointly and severally liable.  (Pl.'s Reply Mem. at
22).

     The undisputed facts show that since November 1, 1998,
the four defendants have shared nearly identical corporate
officers, directors and main office employees.  (Pl.'s Rule
56.1 Stmt. ¶ 6; Def.'s Rule 56.1 Stmt. ¶ 6.)  According to
Eli Tabib, owner of TLE Management, LLC, each of the
defendants is owned by TLE Management, LLC.  (Pl.'s Rule
56.1 Stmt. ¶ 4; Def.'s Rule 56.1 Stmt. ¶ 4.)  All four
defendants are also parties to the Licensing Agreement at
issue in this case and Eli Tabib signed the Agreement on
behalf of all four defendants.  (Hertz Decl., Ex. A).

     Even if each of the four defendants were operated as
completely independent entities, as Defendants contend,
they are each contributorially responsible for the
trademark infringement at issue.  As the Supreme Court has
stated:

>     "[I]f a manufacturer or distributor intentionally
>     induces another to infringe a trademark, or if it
>     continues to supply its product to one whom it knows
>     or has reason to know is engaging in trademark
>     infringement, the manufacturer or distributor is
>     contributorially responsible for any harm done as a
>     result of the deceit."

Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456
U.S. 844, 854 (1982).

In this case, Defendants Highway 98 and Panama did not provide a concrete product to Defendants Marco-Destin and E & T. Rather, Defendants Highway 98 and Panama provided a service. "While the Second Circuit Court of Appeals has not yet reached this issue, other courts, including courts in this District, have similarly applied the Inwood test for contributory liability to venues that provide a service." Tiffany (NJ) Inc. v. eBay, Inc., 576 F.Supp.2d 463, 505 (S.D.N.Y.,2008); see also Polo Ralph Lauren Corp. v. Chinatown Gift Shop, 855 F.Supp. 648, 650 (S.D.N.Y.1994) (sustaining claim for contributory liability for landlords who allowed trademark infringers to use their property); Mini Maid Services Co. v. Maid Brigade Systems, Inc., 967 F.2d 1516 (11th Cir.1992) (imposing liability on franchisers who allowed franchisees to infringe trademarks); Habeeba's Dance of the Arts, Ltd. v. Knoblauch, 430 F.Supp.2d 709, 714-15 (S.D.Ohio 2006) (sustaining claim for contributory liability for landlords who allowed trademark infringers to use their property). Furthermore, this Court has recognized "that one may be held liable as a contributory infringer, not withstanding the fact that one does nothing to assist an infringing party." Power Test Petroleum Distribs. v. Manhattan & Queens Fuel Corp., 556 F.Supp. 392, 395 (S.D.N.Y. 1982).

27

        The undisputed facts show that Defendants Highway 98

and Panama were notified of the termination of the

Licensing Agreement by letter on February 27, 2006. (Pl.'s

Rule 56.1 Stmt. ¶ 52; Def.'s Rule 56.1 Stmt. ¶ 52.)

Therefore, these defendants had actual knowledge of the

infringing activity and are liable, jointly and severably.

                          CONCLUSION

        For the reasons set forth above, Plaintiff's Motion

for Partial Summary Judgment for liability is GRANTED and

Defendant's Cross Motion for Partial Summary Judgment is

DENIED.   The parties are directed to appear before this

Court for a scheduling conference on the issue of damages

on January 6, 2010 at 3:00 p.m. in Courtroom 17C at 500

Pearl Street, New York, New York, 10007.


SO ORDERED:

                              **BARBARA S. JONES**
                              **UNITED STATES DISTRICT JUDGE**


Dated:    New York, New York
          December /6, 2009

28