UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

MARCO DESTIN, INC., PANAMA SURF &
SPORT, INC., E&T, INC.,

           Plaintiffs,

      v.                                    No. 22-CV-8459-LTS

SHAUL LEVY, individually and as agent of
L&L WINGS, INC.; MEIR LEVY,
individually and as agent of L&L WINGS,
INC.; ARIEL LEVY, individually and as agent
of L&L WINGS, INC.; and BENNETT
KRASNER, individually and as agent of L&L
WINGS, INC.,

           Defendants.

-------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiffs Marco Destin, Inc., and its affiliates 1000 Highway 98 East Corp., Panama Surf & Sport, Inc., and E&T, Inc. (collectively, "Marco-Destin"), bring this action, pursuant to Federal Rule of Civil Procedure 60(d), against Defendants Shaul Levy, Meir Levy, Ariel Levy, and Bennett Krasner (collectively "Defendants"), in their individual capacities and as agents of L&L Wings, Inc. ("L&L"). (Docket entry no. 1 ("Compl.").) Rule 60 permits a court to provide, subject to certain limitations, relief from its prior judgments or orders. In this action, Marco-Destin seeks to set aside a February 15, 2011 Stipulated Order of Settlement and Dismissal that concluded an earlier litigation in this district in which L&L brought claims against Marco-Destin for, <u>inter alia</u>, breach of contract and trademark infringement. Marco-Destin principally alleges that Defendants, acting individually and as agents of L&L, perpetrated fraud on the district court and on Marco-Destin in procuring the so-ordered settlement stipulation in the earlier action by asserting ownership rights in a trademark that L&L had fraudulently registered.

Before the Court are two motions to dismiss the Complaint, and a motion for sanctions. Shaul Levy, Meir Levy, and Ariel Levy (collectively, the "Levy Defendants") move for dismissal and for sanctions, arguing that this action is precluded by res judicata, collateral estoppel, laches, and the applicable statute of limitations, and that Marco-Destin ought to be sanctioned for unreasonably multiplying proceedings. (Docket entry no. 31 ("Levy Mem.").) Defendant Krasner separately moves to dismiss based on substantively similar arguments. (Docket entry no. 37 ("Krasner Mem.").) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, and under Federal Rule of Civil Procedure 60 because it has the inherent power to revisit and provide relief in connection with its earlier orders.

The Court has reviewed carefully the parties' submissions in connection with the instant motions and, for the following reasons, grants Defendants' motions to dismiss and denies the Levy Defendants' motion for sanctions.

BACKGROUND[1]

Because the factual record is extensive and encompasses two prior lawsuits as well as a bankruptcy case, the Court provides an abbreviated recitation of the background and discusses primarily those facts that are relevant to the disposition of the instant motions.

---

[1] The facts as alleged in the Complaint are taken as true for the purposes of the instant motions to dismiss. While the Court supplements its factual summary with information provided in declarations appended to the Defendants' motions, the operative facts for the purposes of resolving the motions are only those alleged in the Complaint. The Court does, however, take judicial notice of documents filed in the earlier SDNY litigation, the North Carolina litigation, and the bankruptcy litigation, as well as those made available for public inspection by the United States Patent and Trademark Office. See Sanders v. Sanders, No. 22-99, 2022 WL 16984681, at *1 (2d Cir. Nov. 17, 2022) (In addressing motions to dismiss, "[w]e have held that '[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"(quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998))).

Underlying Action

On May 29, 2007, L&L sued Marco-Destin in the United States District Court for the Southern District of New York (the "Underlying Action"), asserting claims for, inter alia, breach of contract and trademark infringement under the Lanham Act.  (Compl. ¶ 22; see also 07-CV-4137-BSJ-GWG (SDNY).)  The 2007 Complaint alleged that Marco-Destin was in breach of a license agreement, dated November 1, 1998, between Marco-Destin and L&L.  (Compl. ¶ 23.)  L&L alleged that it had been using the "Wings" mark since 1978 in connection with its business, which specialized in the sale of beachwear, beach toys, souvenirs, and related items.  (Compl., Ex. C ("2007 Compl.") ¶ 6.)  L&L claimed that its "Wings" mark was not yet registered with the United States Patent and Trademark Office ("USPTO"), but that, for nearly thirty years, the mark had been recognized by consumers as representing its retail stores and business operations.  (2007 Compl. ¶ 9.)

From Marco-Destin's inception in 1995 until 1998, two principals of L&L, Shaul Levy and Meir Levy, shared ownership rights in the company with the then-principal of Marco-Destin, Eliezer Tabib.[2]  (Id. ¶ 13.)  On or about November 1, 1998, L&L, Shaul Levy and Meir Levy sold their interest in Marco-Destin to Mr. Tabib, making him its exclusive owner, and, in connection with this sale, L&L, as licensor, entered into a license agreement with Marco-Destin, as licensee.  (Id. ¶¶ 13-15; see also docket entry no. 35-4, Richards Decl., Ex. D ("MDI License Agreement").)  Although the agreement provided that L&L was the "owner of the unregistered servicemark, 'Wings,'" and the "owner of trade dress rights to its distinctive design," it notably also contained the following paragraph:

> 11.3.  Licensee acknowledges that **Licensor informed him that there are one or more individuals and/or entities that have**

---

[2] According to the 2007 Complaint, the shared ownership did not extend to the entity E&T, Inc., which was wholly owned by Mr. Tabib.  (2007 Compl. ¶ 13.)

> **registered trademarks and/or servicemarks to the mark "Wings" and can and/or may claim a paramount right to the use of said mark "Wings"**. Licensor does not warrant or give any other assurances and/or indemnification to Licensee's use of said mark "Wings" and or the Mark . . . .

(MDI License Agreement at 1, 7 (emphasis added).)  The MDI License Agreement gave Marco-Destin a license to use the "Wings" mark in a defined territory and for a definite term—until October 31, 2006.  (MDI License Agreement at 1-2.)

The thrust of L&L's claims in the Underlying Action was that Marco-Destin impermissibly continued to use the "Wings" mark after the MDI License Agreement had, by its own terms, terminated.  (2007 Compl. ¶¶ 21-28.)  L&L brought claims for breach of contract, trademark infringement, violations of the New York General Business Law, and common law service mark infringement and unfair competition.  (Id. ¶¶ 29-73.)  On September 18, 2007, approximately four months after L&L filed its complaint, Marco-Destin filed an answer, along with four counterclaims.  (See 07-CV-4137 docket entry no. 9 ("2007 Answer").)  Marco-Destin's counterclaims were based on L&L's alleged misconduct during the course of negotiating the MDI License Agreement, including that L&L allegedly withheld assets in connection with its sale of its ownership rights in Marco-Destin and refused to provide a complete and proper accounting of its control of one or more of Marco-Destin's affiliates, and that Shaul Levy allegedly made misrepresentations regarding the extent of Marco-Destin's rights in the "Wings" mark under the agreement.  (Id. ¶¶ 92-94, 96-99.)  Marco-Destin sought as relief the rescission, revocation, and/or reformation of the MDI License Agreement.  (Id. ¶ 126.)

Following discovery, on September 4, 2008, and October 15, 2008, L&L and Marco-Destin filed, respectively, partial motions for summary judgment as to liability.  (Compl., Ex. E ("2009 SJ Decision") at 1.)  In support of its motion, L&L submitted a Certificate of

Registration, dated July 1, 2008, that it had obtained from the USPTO during the litigation of the Underlying Action, and which certified L&L as the registered owner of the "Wings" mark.[3]  (Id. at 16; see also Compl. ¶¶ 28-37.)  On December 16, 2009, District Judge Barbara S. Jones granted L&L's motion for partial summary judgment, and denied Marco-Destin's cross motion for the same.  (2009 SJ Decision at 1-2.)  Two sections of that decision merit a detailed recitation here.  First, Judge Jones held that Marco-Destin was liable for breach of contract because, inter alia, it had continued using the "Wings" mark in contravention of the plain terms of the MDI License Agreement, and Judge Jones rejected Marco-Destin's arguments regarding fraught contract negotiations and alleged extratextual agreements between the parties.  (Id. at 9-15.)  She further noted that Mr. Tabib had retained the New York law firm of Moses & Singer LLP to represent him during the underlying transaction, that he "is an experienced businessman who has built numerous companies from the ground up" in areas such as retail and real estate, and that drafting the MDI License Agreement took over a year, during which period Moses & Singer LLP had "played a key role."  (Id. at 4, 13.)

Second, Judge Jones held that Marco-Destin was liable for trademark infringement under the Lanham Act.  To prevail on that claim, L&L had to show that (1) the "Wings" mark was entitled to protection, and (2) Marco-Destin's use of the mark was likely to

---

[3] After L&L applied for a registered trademark with the USPTO, the agency sent Defendant Krasner an "Office Action" on February 1, 2007, which documented the existence of similar marks already registered with the agency.  (Docket entry no. 35-6, Richards Decl., Ex. F ("Office Action").)  Defendant Krasner responded to the Office Action on July 30, 2007, stating that one of the agency's identified, previously-registered marks was no longer in use by its last known owner, "Shepard Morrow."  (Office Action at 113.)  The Court notes that "[t]he USPTO is required by law to maintain records of trademark applications and registrations, and to make them available for public inspection."  See Personal Information in Trademark Records, USPTO, https://www.uspto.gov/trademarks/apply/faqs-personal-information-trademark-records (last visited Aug. 9, 2023) [https://perma.cc/K775-XV3M]; see also 37 C.F.R. §2.27.

cause consumers confusion as to the origin or sponsorship of its goods.  (Id. at 16.)  Judge Jones ruled that L&L's July 1, 2008 Certificate of Registration was prima facie evidence that the mark was entitled to protection, and that Marco-Destin bore the burden of demonstrating that the mark was invalid or that the use of its own mark was not likely to cause confusion.  (Id.)  She held that Marco-Destin did not meet its burden.  (Id.)  Judge Jones then granted L&L summary judgment on the remaining four state and common law counts, only one of which—common law service mark infringement—involved consideration of the Certificate of Registration, because liability under the Lanham Act established liability for common law service mark infringement.  (Id. at 20-25.)

Following Judge Jones' decision as to liability, the litigation continued as to damages, culminating in a second decision on November 5, 2010, which granted in part and denied in part L&L's motion for summary judgment.  (See 07-CV-4137 docket entry no. 115.)  On February 15, 2011, the parties entered into a Stipulated Order of Settlement and Dismissal to resolve their disputes arising in, out of, or relating to the Underlying Action.  (Compl. ¶ 50; see also Compl., Ex. A "("2011 Settlement Order").)  Under the 2011 Settlement Order, Marco-Destin and its affiliates were required to pay L&L $3,500,000 and cease using the "Wings" mark and trade dress.  (Compl. ¶ 51.)  The agreement also contained cross-releases, pursuant to which Marco-Destin agreed not to bring any action against L&L, and its present and former officers and agents, among others, based on the "Wings" mark and trade dress, or on the MDI Licensing Agreement.  (Id.; see also 2011 Settlement Order at 6-7.)

Events Following Underlying Action

*EDNC Action*

On September 9, 2011, a few months after Judge Jones issued the 2011 Settlement Order, an unrelated company named Beach Mart, Inc. ("Beach Mart"), sued L&L in the United States District Court for the Eastern District of North Carolina, regarding the parties' competing rights in the "Wings" mark under a licensing agreement, in which L&L was the licensor and Beach Mart was the licensee ("EDNC Action").  (Compl. ¶ 58; see also 11-CV-44-FL (EDNC).) The EDNC Action was lengthy, and two details are worth noting.  First, the September 6, 2005 license agreement between L&L and Beach Mart, unlike the MDI License Agreement, contained no provision indicating that L&L had informed Beach Mart that a third party may own registered trademarks or servicemarks to the "Wings" mark; to the contrary, it set forth that Beach Mart would not "contest [L&L's] **exclusive** ownership of all rights to the name 'WINGS' and any similar name, without limitation including trademark and/or servicemark rights."  (Docket entry no. 49-1, Richards Decl., Ex. M ("BMI License Agreement") at 2 (emphasis added).)

Second, after discovery was complete and on the eve of trial, Beach Mart learned from one of L&L's third-party licensees about the existence of a 1994 license agreement between L&L and Shepard Morrow.  (See 11-CV-44 docket entry no. 438 ("Aug. 2019 Unpublished Fourth Circuit Op.") at 9.)  According to that agreement, Shepard Morrow, as the licensor, was the owner of the "Wings" mark and five associated registrations with the USPTO, and L&L, as the licensee, was permitted to use the mark subject to prescribed terms.  (Compl., Ex. D ("Morrow License Agreement").)  As a result of this discovery, the district court permitted Beach Mart to amend its complaint—as the ownership status of the mark was a fundamental issue in the case—and granted Beach Mart's motion for sanctions, finding that Shaul Levy had engaged in "egregious discovery conduct," by, inter alia, intentionally withholding his knowledge of the Morrow License Agreement and other agreements that L&L had executed with third-party

licensees.  (Aug. 2019 Unpublished Fourth Circuit Op. at 9.)  That decision was affirmed on appeal.  (Id. at 5.)

The EDNC Action concluded with a jury verdict on or about November 16, 2020, that was later reduced to a judgment, on March 29, 2021, in which the district court held, inter alia, that: (1) Beach Mart had proven by a preponderance of the evidence that L&L fraudulently induced Beach Mart into entering their license agreement; (2) Beach Mart had proven by clear and convincing evidence that L&L knowingly made false representations of fact with the intent to deceive the USPTO, resulting in the issuance of two federal trademark registrations; and (3) Beach Mart had proven by a preponderance of the evidence that all rights in the "Wings" mark were owned by Shepard Morrow, and that the Morrow License Agreement remains in effect.  (Compl., Ex. B ("Beach Mart Judgment") at 1-2.)

*L&L's Bankruptcy*

On April 21, 2021, approximately one month after the EDNC Action concluded with an award of $16 million in damages to Beach Mart, L&L filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the Unites States Bankruptcy Court for the Southern District of New York.  (See 21-BR-10795-DSJ (S.D.N.Y.).)  Marco-Destin filed a proof of claim in the bankruptcy case that incorporated its fraud on the court claim relating to the Underlying Litigation and, after several rounds of briefing and oral arguments, the bankruptcy court issued an order on April 7, 2022, sustaining L&L's objection to Marco-Destin's claim and disallowing that claim.  (See docket entry no. 30-24, Rattet Decl., Ex. 24.)  Marco-Destin appealed that order to this Court, which raised sua sponte a question as to whether the bankruptcy court had the power to adjudicate a claim premised on fraud allegedly perpetrated on a district court outside of the context of the bankruptcy proceeding, and elected to treat the

bankruptcy court's order as Proposed Findings of Fact and Conclusions of Law.  (See 22-CV-4058-LTS (S.D.N.Y.).)   The bankruptcy court's proposed findings and conclusions remain pending before this Court.

Marco-Destin's Claims of Fraud

We turn now to Marco-Destin's Complaint in the instant action.  For purposes of the following analysis, the Court groups Plaintiffs' allegations of fraudulent conduct in the Underlying Action into three categories—(1) affirmative misrepresentations regarding ownership of the "Wings" mark, (2) intentional concealment of the Morrow License Agreement, and (3) fraudulent procurement from the USPTO of the Certificate of Registration and the submission of that Certificate in connection with a motion for summary judgment in the Underlying Action.  First, Marco-Destin alleges that L&L's agents "made repeated misrepresentations to the Court claiming ownership in the 'Wings' mark and trade dress," including in a declaration filed by Defendant Krasner (who was, at the time, L&L's counsel), in a sworn affidavit filed by Defendant Ariel Levy (who was, at the time, L&L's Vice President), and in L&L's Counter Statement to Marco-Destin Rule 56.1 Statement.  (Compl. ¶ 24(a)-(d).)  Second, Marco-Destin alleges that L&L's agents purposefully withheld from the Court and from Marco-Destin the Morrow License Agreement, which would have revealed that Shepard Morrow was the "true owner" of the "Wings" mark.  (Id. ¶¶ 25-26, 38.)  Marco-Destin further claims that Defendants Shaul Levy, Meir Levy, and Krasner were personally involved in and had knowledge of L&L's prior "failed [] efforts to obtain its own trademark registration" between 1987 and 1992, which were unsuccessful due to Morrow's "superior trademark rights."  (Id. ¶¶ 26-27.)  Third, Marco-Destin alleges that Defendant Krasner made multiple false statements to the USPTO in L&L's application for a trademark about the company's purported ownership of the "Wings" mark,

including: in the original application filed on August 29, 2006; in response to an Office Action, on July 30, 2007; and around February 28, 2008, when the last trademark registration that L&L had licensed from Morrow expired. (Id. ¶¶ 29-33.) Citing the EDNC Court's finding of fraud on the PTSO, Marco-Destin claims here[4] that Defendant Krasner knowingly submitted the fraudulently-obtained July 1, 2008 Certificate of Registration to the Court in the Underlying Action in support of L&L's trademark infringement claim, procured a favorable summary judgment ruling, and thereafter induced Marco-Destin to enter into the 2011 Settlement Order based on the false claim of ownership. (Id. ¶¶ 34-51.)

Marco-Destin pleads two counts—"fraud on the court" and "fraud"—and appears to base each count on the same three groups of allegations. Marco-Destin seeks vacatur of the 2011 Settlement Order, sanctions, and money damages. (Compl. at 26-27.) The Levy Defendants and Defendant Krasner each move to dismiss the complaint, and the former also move for sanctions.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d

---

[4] Marco-Destin alleges that one of the two L&L trademark registrations that were ordered cancelled in the EDNC Action was procured during and submitted in the Underlying Action. (Compl. ¶¶ 3-4.)

499, 501 (2d Cir. 2007).

At the outset, the Court notes that much of the parties' briefing addresses the preclusive effect of orders in the bankruptcy litigation, including the bankruptcy court's order that sustained L&L's claim objection and disallowed Marco-Destin's fraud on the court claim. Because the Court has elected to treat that order not as a final order, but as Proposed Findings of Fact and Conclusions of Law, the Court need not and does not address any of those arguments. Therefore, the Court turns directly to merits of Marco-Destin's claims.

Count One: Fraud on the Court[5]

Federal Rule of Civil Procedure Rule 60(d)(3) recognizes a district court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). Although Rule 60 is commonly used by parties to file motions seeking relief from an order or judgment of the Court, the Rule specifically provides that it "does not limit a court's power to [] entertain an independent action to relieve a party from a judgment, order, or proceeding." Fed. R. Civ. P. 60(d)(1). Nevertheless, the Second Circuit has cautioned that "'the type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion' under Rule 60(b)(3) for fraud on an adverse party." King v. First Am. Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002) (quoting Gleason v. Jandrucko,

---

[5]  In its consolidated opposition to the motions to dismiss, Marco-Destin objects to the bankruptcy court's "summary" dismissal of its fraud on the court claim without holding an evidentiary hearing. (See, e.g., docket entry no. 41 ("Pl. Opp.") at 9.) To the extent Marco-Destin seeks an evidentiary hearing here, the Court finds that such a hearing is unnecessary because it can address the merits of the claim based on the pleadings and matters of which it takes judicial notice. See, e.g., Shah v. Eclipsys Corp., 2010 WL 2710618, at *15 (E.D.N.Y. July 7, 2010) (holding that "an evidentiary hearing is not always necessary before finding a party has committed fraud on the court," but noting that some courts "have exercised their discretion" to hold such hearings).

860 F.2d 556, 558 (2d Cir. 1988)).

"[T]o sustain an independent action for fraud on the court, a plaintiff must prove, by clear and convincing evidence, that [1] the defendant interfered with the judicial system's ability to adjudicate impartially and that [2] the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." Mazzei v. The Money Store, 62 F.4th 88, 93-94 (2d Cir. 2023).  Moreover, as to the defendant's state of mind, the law of this Circuit requires clear and convincing evidence of bad faith.  Id. at 95.  Because fraud on the court "is a claim that exists to protect the integrity of the judicial process," it cannot be time-barred.  See In re Old Carco LLC, 423 B.R. 40, 51–52 (Bankr. S.D.N.Y. 2010) (citation omitted), aff'd, 420 F. App'x 89 (2d Cir. 2011).

The Court, which assumes for purposes of this motion practice the truth of Plaintiffs' allegations, concludes that Marco-Destin fails to state a claim of fraud on the Court because Plaintiffs have not met their burden of showing that they were prevented "from fully and fairly presenting a case or defense" in the Underlying Action.  As shown in the Court's factual recitation above and as further explained below, Marco-Destin was in possession of information that would have supported inquiry into the veracity of L&L's claims of trademark ownership and had every opportunity in the Underlying Action to use the tools available in the adversarial process to contest L&L's asserted ownership rights in the "Wings" mark.  The record of the Underlying Action shows Defendants did not thwart any efforts by Marco-Destin to contest ownership; rather, Marco-Destin simply chose not to explore the issue.

The subject of the Underlying Action was the MDI License Agreement, and a significant part of the dispute, as indicated by the 2009 SJ decision, naturally focused on contract formation, including the parties' respective understandings, their sophisticated representation, the

underlying negotiations, and the eventual terms.  Those terms include paragraph 11.3 of the MDI License Agreement, which recites, clearly, that Marco-Destin "acknowledges" it was told by L&L that "one or more individuals and/or entities [] have registered trademarks and/or service marks to the 'Wings' mark and can and/or may claim a paramount right" to its use.  Far from claiming that it attempted to discern, through discovery or otherwise, who such owner or owners may be, Marco-Destin fails to mention this provision in the instant Complaint, and does not address the provision in its consolidated opposition to the motions to dismiss.  (See generally Compl.; docket entry no. 41 ("Pl. Opp.").)  That choice is not surprising.

In the Court's review of the record in the Underlying Action, neither paragraph 11.3 nor any portion of its language appears in any decision.  Neither Marco-Destin nor Defendants claim that the parties engaged in any litigation over, or even referred to this paragraph or any other aspect of the MDI License Agreement in connection with L&L's claim of ownership rights in the "Wings" mark.  "In short, had [Marco-Destin] exercised the required due diligence in the prior action and explored avenues of proof available to [it]," the alleged falsity of L&L's claimed ownership would have been uncovered.  Mazzei, 62 F.4th at 94.

Moreover, the Court finds that the same considerations apply to Marco-Destin's arguments regarding concealment of the Morrow License Agreement and false representations in connection with the Certificate of Registration.  Marco-Destin relies heavily on the judgment issued in the EDNC Action involving L&L and Beach Mart in support of its claims.  In contrast to the BMI License Agreement that was at issue in the EDNC Action, however, the MDI Licensing Agreement disclosed that another individual or entity possessed registered trademarks and/or service marks for the "Wings" mark and could claim a paramount right to its use.  To be sure, the Court does not condone L&L's failure to disclose the existence of the Morrow License

Agreement in the Underlying Action, and, as already noted above, L&L was sanctioned for concealing that agreement in the EDNC Action.  Nevertheless, L&L's failure to disclose that agreement did not relieve Marco-Destin of its obligation to do appropriate due diligence based on what it did know under the terms of its own agreement.  If Marco-Destin had sought to ascertain from L&L during the Underlying Action who else could claim a paramount right to use the "Wings" mark, it might well have found the Morrow License Agreement on its own.  Thus, the Court declines to credit Marco-Destin's conclusory allegation that, "[a]t the time of the Underlying [] Action, neither Marco-Destin nor the District Court were or could have been aware that L&L was not in fact the true owner of the WINGS trademark."  (Compl. ¶ 25.)

Nor did Marco-Destin elect to challenge in any meaningful way L&L's use of the Certificate of Registration in aid of its trademark infringement claim.  That document constituted prima facie evidence of L&L's right to exclusive use of the "Wings" mark that could have been rebutted.  Clearly, had Marco-Destin made efforts in the first instance to identify the other owner(s) of the "Wings" mark referenced in the MDI License Agreement, it could have marshalled its own evidence to rebut the Certificate of Registration.  Moreover, the USPTO is required by law to make all trademark applications available for public inspection.  See, e.g., 37 C.F.R. § 2.27.  Had Marco-Destin examined this record, even after L&L filed the Certificate of Registration in the Underlying Action, it would have revealed, inter alia, an agency "Office Action," as well a response thereto by Defendant Krasner, in which Krasner identified Shepard Morrow as the previous owner of a similar mark, and asserted that Morrow no longer used the mark.  Marco-Destin, armed with this discovery, could have requested more tailored information from L&L, or asked to depose any of its officers who had knowledge of Morrow's registration.

Plaintiffs attempt to undercut this latter point—the availability of the trademark

application in the public domain—by citing, yet again, the EDNC Action. (Pl. Opp. at 29-30.) There, the Court of the Appeals for the Fourth Circuit held that the district court had erred when it rejected Beach Mart's negligent misrepresentation claim on the theory that Beach Mart could have discovered Morrow's prior registrations through a reasonable inquiry of the public records because that claim was based on L&L's failure to disclose its status as licensee of Morrow. See Beach Mart, Inc. v. L&L Wings, Inc., 784 F. App'x 118, 126 (4th Cir. 2019). Marco-Destin's comparison of its position to that of Beach Mart is ill-founded for at least two reasons. First, Marco-Destin fails to mention that the Fourth Circuit noted that "no evidence in the record" suggested that "Beach Mart could have discovered the license on its own," which is not the case here, given the inclusion of paragraph 11.3 in the MDI License Agreement. Id. Second, Marco-Destin's argument betrays a fundamental misunderstanding of the relevant inquiry for evaluating a fraud on the court claim. The question here is whether Marco-Destin could have fully and fairly litigated L&L's purported ownership in the "Wings" mark during the Underlying Action, not whether L&L had a duty to disclose the Morrow License Agreement to Marco-Destin as part of their "commercial relationship." See id.

        The requirement that, in order to establish fraud on the court, "a party must have been prevented from fully and fairly presenting her case is consistent with the deference owed to the finality of judgments and respect for the adversarial process." Mazzei, 62 F.4th at 94. As the Second Circuit has aptly observed, "[o]ur adversarial process relies on the parties to keep one another in check." Id. at 95. Marco-Destin, like any other litigant, was afforded "broad discovery and disclosure supervised" by a judicial officer, and it cannot now seek to set aside a stipulated order after it failed to take advantage of these opportunities. Id. Because Marco-Destin could have addressed the alleged fraud in the Underlying Action, the Court need not and

does not address whether L&L, acting in bad faith, "interfered with the judicial system's ability to adjudicate impartially." Id. at 94.

Count Two: Fraud

Counts One and Two are based on the same factual allegations. To the extent Count Two asserts a second fraud on the court claim, the claim is dismissed for the same reasons explained above. To the extent it constitutes an independent fraud claim against the individual defendants acting "as agents" of L&L, it must also be dismissed.

By its plain terms, Rule 60 provides that, "[o]n motion or just terms," the court may relieve a party from an order because of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). A motion under Rule 60(b)(3) must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). While the parties argue over the proper application of the statute of limitations for filing fraud tort claims under New York law, the Second Circuit has twice rejected the contention that a state statute of limitations applies to Rule 60 claims, once in a published opinion addressing a Rule 60 motion, and once in a summary order addressing a Rule 60 independent action. See King v. First Am. Investigations, Inc., 287 F.3d 91, 94 (2d Cir. 2002); LinkCo, Inc. v. Naoyuki Akikusa, 367 F. App'x 180, 182 (2d Cir. 2010). The one-year limitations period for claims that are properly encompassed by Rule 60(b)(3) is "absolute." Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000).

Moreover, if a party's allegations properly fall under Rule 60(b)(3), and that party inexcusably fails to file a timely claim for relief within the one-year limitations period, it cannot salvage its claim by invoking Rule 60(d)(3). See, e.g., Rowe Ent. v. William Morris Agency Inc., No. 98-CV-8272 RPP, 2012 WL 5464611, at *15 n.4 (S.D.N.Y. Nov. 8, 2012) (citing

Anderson v. New York, No. 07-CV-9599, 2012 WL 4513410, at *4 (S.D.N.Y. Oct. 2, 2012)). The constraint applies here, whether Marco-Destin grounds its claim for relief in Rule 60(d)(1) or in 60(d)(3). Excepting fraud on the court, any allegation of fraud on the part of L&L and its agents in the Underlying Action is clearly covered by the plain language of Rule 60(b)(3), and Marco-Destin may not sidestep the limitations period for that claim by packaging it in an independent action. The Court has already demonstrated that Marco-Destin had every opportunity to unearth L&L's alleged fraudulent conduct during the Underlying Action, and its yearslong delay in bringing this standalone fraud claim is inexcusable. Because Rule 60 bars this claim, the Court cannot disturb the 2011 Settlement Order.

To the extent Count Two constitutes an independent fraud claim for damages against the individual defendants acting individually—in other words, not as an "opposing party" under Rule 60—it must be dismissed both because the applicable statute of limitations has expired and because it is precluded by the releases in the 2011 Settlement Order. First, under New York law, a plaintiff must bring a fraud action within "the greater of six years from the date the cause of action accrued or two years from the time plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." Dowe v. Leeds Brown L., P.C., 419 F. Supp. 3d 748, 761 (S.D.N.Y. 2019), aff'd sub nom. Dowe v. Leeds, Morelli & Brown PC, No. 21-3069-CV, 2023 WL 3986373 (2d Cir. June 14, 2023).

At the motion to dismiss stage, it is "proper under New York law to dismiss a fraud claim" when the alleged facts "establish that a duty of inquiry existed and that an inquiry was not pursued." Koch v. Christie's Int'l PLC, 699 F.3d 141, 155–56 (2d Cir. 2012). "[T]he court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from

the date such inquiry should have revealed the fraud." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 362 (2d Cir. 2013) (citation omitted).  As explained in detail above, Marco-Destin did not exercise reasonable due diligence during the Underlying Action, and the Court imputes to Marco-Destin knowledge of what it should have discovered had it investigated L&L's alleged ownership rights in the "Wings" mark.  Instead of "shut[ting] [its] eyes to the facts which call for investigation," Marco-Destin ought to have made that inquiry in the Underlying Action. Koch, 699 F.3d at 155.  Thus, this claim is well outside the applicable statute of limitations as against all defendants.

Second, because Marco-Destin cannot avail itself of Rule 60 to disturb the 2011 Settlement Order, the order and its release provisions remain intact.  In the stipulated order, Marco-Destin agreed not to bring any cause of action relating to the "Wings" mark or the MDI License Agreement—such as the instant fraud claim for damages—against the "present and former officers, directors, employees, agents, and representatives" of L&L.  (See 2011 Settlement Order ¶ 10.)  The order provides that the Court "retain[s] jurisdiction to enforce [its] terms and conditions."  (Id. ¶ 11.)  The Court applies the release provisions as written; they mandate dismissal of the instant claim against the individual defendants.

Therefore, Count Two must be dismissed because it is time-barred under Rule 60, and the applicable state statute of limitations, and is precluded by the releases embodied in the 2011 Settlement Order.

Sanctions

The Levy Defendants' motion includes a request for sanctions pursuant to 28 U.S.C. § 1927.  They argue that Marco-Destin's claims are meritless and that Marco-Destin unreasonably multiplied proceedings.  (Def. Mem. at 24-25.)  "To succeed on a motion for

sanctions under 28 U.S.C. § 1927 or the court's inherent powers, the movant must demonstrate 'clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (quoting Agee v. Paramount Commc'ns Inc., 114 F.3d 395, 398 (2d Cir. 1997)).  This is a high bar, and the Court finds that it has not been met here.  The bankruptcy court order that Defendants argue precludes Marco-Destin's instant claims is being treated as Proposed Findings and Conclusions of Law, because it is unclear whether an Article I court has the authority to finally adjudicate a claim seeking to set aside an order issued by an Article III court.  As this is the first time Marco-Destin has brought such a claim in a district court, the Court finds that sanctions are inappropriate.  The motion is denied to the extent it seeks the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motions to dismiss the complaint, and denies the Levy Defendants' motion insofar as it seeks sanctions.  The Clerk of Court is respectfully directed to terminate the motions at docket entry nos. 28 and 34, enter judgment in favor of the Defendants, and close case no. 22-CV-8459.

SO ORDERED.

Dated: New York, New York
August 28, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge